**Duwayne MOON, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**No. 15095.**

United States Court of Appeals, Fifth Circuit.

March 31, 1955.

Tom S. Williams, Houston, Tex., Hayden C. Covington, Brooklyn, N. Y., for appellant.

William O. Braecklein, Asst. U. S. Atty., Dallas, Tex., Heard L. Floore, U. S. Atty., Warren C. Logan, Jr., Asst. U. S. Atty., Fort Worth, Tex., for appellee.

Before BORAH and TUTTLE, Circuit Judges, and DAWKINS, District Judge.

DAWKINS, District Judge.

Disposition of this and two other cases, Mayfield v. United States, 5 Cir., 220 F.2d 729, and Rowell v. United States, No. 15,068, —— F.2d ——, was postponed until the Supreme Court could decide the cases of Witmer v. United States, 75 S.Ct. 392, from the Third Circuit; Gonzales v. United States, 75 S.Ct. 409, from the Sixth Circuit; Simmons v. United States, 75 S.Ct. 397, from the Seventh Circuit and Sicurella v. United States, 75 S.Ct. 403, from the Seventh Circuit. Those decisions were handed down on March 14th and received on the 21st.

Counsel for the Government has made a correct statement of the sequence of events in this case and the same is copied in the footnote.[1] It relied heavily on the decisions of the Courts of Appeals in the Simmons and Sicurella cases above, both of which were reversed by the Supreme Court. Here, as in those two

---

[1] "Appellant registered with Local Board No. 22 at McKinney, Texas, on September 11, 1948. The board mailed appellant his classification questionnaire, SSS Form 100, on September 28, 1948, and appellant filled out same and returned it on October 8, 1948. Appellant advised his local board that he was then working as a farm laborer, and had had previous experience in the fields of printing, baking, factory work, and prior farming activities. Appellant left completely blank that portion of his questionnaire which invited an assertion of his claim to being a conscientious objector. On October 19, 1948, appellant was classified I-A and notified thereof on the same day. On August 14, 1950, he was ordered to report for a pre-induction physical examination. On August 21, 1950, appellant requested a transfer for such physical examination based on the fact that he was then living and working in Lubbock, Texas and the same was approved by the board. Appellant submitted a copy of his marriage certificate to the board, and on August 23, 1950, his order to report for physical examination was cancelled. Appellant was classified III-A on August 29, 1950.

"Thereafter, on October 23, 1951, appellant was classified I-A, and he was so notified on the same day. On October 28, 1951, appellant, for the first time, advised his draft board that he was a Jehovah (sic) Witness and conscientiously opposed to war. The board on October 30, 1951, mailed appellant a sconscientious objector form, SSS Form 150, and instructed him to sign a statement of appeal and to indicate the classification he thought he was entitled to. Appellant's appeal statement and requested classification of IV-E, together with his conscientious objector form, was filed with his local draft board on November 5, 1951. Appellant stated he had received his religious training from his mother and had become a member of Jehovas (sic) Witnesses in 1942.

"Appellant's file was forwarded to the Board of Appeals on November 6, 1951, and such board concluded that appellant was not entitled to a conscientious objector classification, and his file was, on November 27, 1951, referred to the Department of Justice for a hearing and subsequent report and recommendation by that Department. On April 30, 1952, appellant was notified to appear before a hearing officer at Sherman, Texas, on May 16, 1952, and again on May 20, 1952, he was notified to so appear on May 30, 1952. By letter dated May 27, 1952, appellant advised his local board that he would be unable to attend the hearing, and stated, 'I moved to Dallas, Texas, [from Lubbock] a few weeks ago, so I did not have a chance to obtain papers or documents to substantiate my religious convictions.' Thereafter, appellant was again notified to report to the hearing officer at Sherman, Texas, the time of such hearing being designated as June 15, 1952. Nothing in his file reveals that appellant ever replied to this notice, and the hearing officer, on July 1, 1952, made his recommendation that appellant's claim as a conscientious objector *be upheld*

cases, the claim to exemption was that the registrant was conscientiously opposed to war or combat of any kind, except in defense of himself, his sect and the members of his faith. There, as here, the claim to exemption was not made for two years or more after registration and then only when appellant was placed in Class I-A after periods in other classifications and deferment had expired.

The Supreme Court's reversal in the Simmons and Sicurella cases was based upon the failure to furnish the registrants with résumés of the investigation by the FBI in their reports to the Department of Justice, or in other words, to inform claimants of adverse information developed by the investigation. In the Simmons case the report of the FBI contained a number of incidents tending to show that Simmons was not conscientiously opposed to war, and the Court held, in effect, this amounted to a denial of due process because it deprived him of the right to answer such statements.

Sicurella claimed exemption as a conscientious objector. There was no dispute as to his good faith, but he, too, admitted he would fight in defense of his person, his faith, and the brethren

of his sect. In holding that such beliefs did not prevent a registrant from coming within the intendment of the statutory exemption, the Supreme Court said:

"The test is not whether the registrant is opposed to all war, but whether he is opposed, on religious grounds, to *participation* in war. As to theocratic war, petitioner's willingness to fight on the orders of Jehovah is tempered by the fact that so far as we know, their history records no such command since Biblical times and their theology does not appear to contemplate one in the future. And although the Jehovah's Witnesses may fight in the Armageddon, we are not able to stretch our imagination to the point of believing that the yardstick of the Congress includes within its measure such spiritual wars between the powers of good and evil where the Jehovah's Witnesses, if they participate, will do so without carnal weapons.

"We believe that Congress had in mind real shooting wars when it referred to participation in war in any form—actual military conflicts.

without having been afforded an opportunity to interview or observe appellant in person.

"By letter dated July 23, 1952, the Special Assistant to the Attorney General recommended to the Appeal Board that appellant's claim for classification as a conscientious objector be denied and that appellant be classified I-A. The chairman of the Appeal Board advised the local board, on August 20, 1952, that it was classifying appellant as I-A, because, '* * * he is willing to participate in violence and combat for the purpose of defending his brethren; and because of his acceptance of I-A and III-A for some three years without ever indicating his claim to conscientious objector classification. We are further impressed by this man's failure to appear at the hearing in Sherman. No doubt, it would have been an inconvenience to him, but a matter of this importance certainly would have indicated a different course than that pursued by this registrant.' Appellant was notified of the action taken by the Appeal

Board, and he was ordered to report for his physical examination on September 9, 1952. On August 26, 1952, appellant appealed his I-A classification and explained his non-appearance before the hearing officer by stating, 'One reason that I did not come personally in the previous appeal was that I had just come to Dallas, and I did not know anyone here to bring as a witness, and too far to bring anyone from Lubbock, Texas.' On September 2, 1952, appellant's file was forwarded by his local board, according to Selective Service regulations, to the State Director, Austin, Texas, for his transmittal to the President of the United States. On October 28, 1952, the National Selective Service Appeal Board classified appellant I-A by a vote of 3 to 0 and appellant was, on November 14, 1952, ordered to report for induction on December 1, 1952. Appellant reported on the appointed date, but refused to step forward and be inducted." (Emphasis supplied.)

between nations of the earth in our time—wars with bombs and bullets, tanks, planes and rockets. We believe the reasoning of the Government in denying petitioner's claim is so far removed from any possible congressional intent that it is erroneous as a matter of law." [75 S.Ct. 406.] (Emphasis by the authority quoted.)

In the present case, there was no known evidence offered by the Government before the Board to dispute appellant's statement, made on proper form, of his conscientious objection to war within the meaning of the statute, although he was very dilatory and failed to appear at the hearing by the Department of Justice or before the Board of Appeals. Nevertheless, the Examiner had recommended that the exemption be granted but the Department recommended and the Board held that he was not entitled to the exemption.

We are unable to distinguish this case from that of Sicurella and the conviction and sentence are set aside.

Reversed.