**UNITED STATES of America**
v.
**Joe David WILSON.**
**Crim. A. No. 14187.**

United States District Court
W. D. Louisiana, Shreveport Division.
July 18, 1955.

**486**

Γ. Fitzhugh Wilson, U. S. Atty., and Q. L. Stewart, Asst. U. S. Atty., Shreveport, La., for the Government.

Victor V. Blackwell, Covington, La., for defendant.

DAWKINS, Chief Judge.

Prosecution proceeds here upon an indictment charging defendant with violation of the Universal Military Training and Service Act, 50 U.S.C.A.Appendix, § 462, in that, having theretofore registered, he knowingly, willfully and unlawfully refused to submit to induction into the Armed Forces of the United States, on May 3, 1954. He claims to be a conscientious objector.

Tried to the Court, a jury trial having been formally waived, the matter now is ready for decision as to defendant's guilt or innocence.

At the conclusion of the Government's case, defendant offered no oral testimony, and merely refiled his Draft Board cover sheet, already placed in evidence by the Government. He then filed an original and supplemental motion for acquittal, in which he urges that he is not guilty because, he says:

1.) That there is no evidence to show his guilt, the Government having wholly failed to prove a violation of the Selective Service Act and Regulations;

2.) That the undisputed evidence shows that his right to both procedural and substantive due process was violated in the following respects:

a.) The Local Board's refusal to reopen his classification upon the submission of SSS Form 150 was arbitrary and capricious;

b.) Such refusal was without basis in fact;

c.) Such refusal denied him due process of law and all other rights and remedies under the Act and Regulations, available to registrants where the classification is reopened;

d.) Such refusal was an abuse of its discretionary powers;

3.) That sections 1625.2 (2) and 1625.4 of the Regulations are invalid, null and void, because in conflict with the Act, particularly sec. 6(j), if the Local

Board's refusal to reopen defendant's classification is based on those sections;

4.) The Local Board did not, in violation of registrant's rights, post in a conspicuous place in the Local Board's office the names and addresses of advisors to registrants.

After hearing oral arguments upon the motion, it was taken under advisement on briefs to be filed. These briefs, and the authorities relied on, have been studied carefully, with full regard for the basic principles we must follow in deciding cases of this kind:

1.) "Congress in its wisdom considered it more essential to respect a man's religious belief than to force him to serve in the armed forces. The draft boards and the Courts are bound to carry out that policy." [1]

2.) "It is well to remember that it is not for the courts to sit as super draft boards, substituting their judgments on the weight of the evidence for those of the designated agencies. Nor should they look for substantial evidence to support such determinations. Dickinson v. United States, 1954, 346 U.S. 389, 396, 74 S.Ct. 152, 157, 98 L.Ed. 132. The classification can be overturned only if it has 'no basis in fact.' United States v. Estep, 1946, 327 U.S. 114, 122, 66 S.Ct. 423, 427, 90 L.Ed. 567." [2]

We also have studied the three other decisions of the United States Supreme Court decided on March 14, 1955, Sicurella v. United States, 348 U.S. 385, 75 S.Ct. 403; Simmons v. United States, 348 U.S. 397, 75 S.Ct. 397, and Gonzales v. United States, 348 U.S. 407, 75 S.Ct. 409, and the latest expressions of the United States Court of Appeals for the Fifth Circuit, Olvera v. United States, 223 F.2d 880; Rowell v. United States, 223 F.2d 863; and Riles v. United States, 223 F.2d 786.

Proceeding upon those principles, and guided by the teachings of these binding precedents, we now set forth the undisputed facts and our opinion as to the applicable law.

First, the facts:

Defendant registered with the Selective Service System on September 28, 1951, and filed his sworn questionnaire on January 14, 1952. Therein he indicated he was employed full time at killing and dressing chickens for a poultry company, at a salary of about $30 per week.

He stated he was *not* a minister of religion, did *not* serve regularly as a minister, and was *not* a student preparing for the ministry. He made *no* claim to being conscientiously opposed to participation in war in any form, and did not request SSS Form No. 150, being the official form to be filled in and submitted to the Board by conscientious objectors.

On November 7, 1952, he was classified I-A by his Local Board, and notice of that classification was mailed to him. He made no response to this and did not register an objection of any kind.

Five months later, on April 7, 1953, the Board mailed defendant an order to report for Armed Forces physical examination on May 7, 1953, following which, on April 29, 1953, the Board received a letter from him requesting a "hardship" classification, because he allegedly was supporting a family of four, said to have no other income. A letter addressed to the Board on the same date by a Mr. Jake Blalock supported his claim. Action upon this request was not taken immediately and defendant submitted to the physical examination, without protest, on May 7, 1953. He passed the physical and mental examinations and was mailed a certificate of acceptability on May 14, 1953. With respect to his request for a "hardship" deferment, the Board on June 5, 1953, considered it carefully but declined to reopen his classification because, due to his small earnings, he could support his family just as well on income from the Armed Forces. Defendant was

1. Language of Judge Rives in Williams v. United States, 5 Cir., 216 F.2d 350, 352.

2. Witmer v. United States, 348 U.S. 375, 75 S.Ct. 392, 395.

notified of this action immediately, but did not protest, and neither he, nor any one in his behalf, sought to appeal from the Board's action.

On March 8, 1954, the Board mailed defendant an order to report for induction on April 7, 1954. On the same date, but after the order already had been mailed, defendant appeared at the Board office and reported that he had been married on February 6, 1954. He requested no Board action with respect to this, merely discussing it with the Clerk, who, in the course of the conversation, advised him he had been ordered that day to report for induction. At that time no mention was made by defendant of any conscientious objection to military service.

Defendant's wife went to the Board office on March 16, 1954, and obtained an SSS Form 150. Defendant was not with her on this occasion. She returned the executed form to the Board three days later, and again he did not make an appearance. Moreover, he did not then, or at any time, request to appear before the Board in support of his claim; and he did not then, or later, submit any letters, affidavits or other confirmatory evidence.

In the executed form filed with the Board, nearly two weeks after the induction notice, defendant claimed conscientious opposition, by reason of his religious training and belief, both to participation in war in any form and to noncombatant training or service in the Armed Forces. He claimed membership in the Jehovah's Witnesses organization, stating that he had become a member "*during the past few months*". (Emphasis supplied.) With respect to the nature of his belief, he stated:

"I have *recently* (emphasis ours) started studying the Bible in an effort to gain accurate knowledge of God's purposes. I have a firm conviction that it would be a violation of God's will to take any part in conflicts between nations of this world. Ephisians (*sic*), 6:12 states, For we wrestle not against flesh and blood, but against principalities, against powers, against the rulers of the

darkness of this world, against spiritual wickedness in high places. 2d Timothy 2:3, 4 states, Thou therefore endure hardness as a good soldier of Jesus Christ. No man that warreth entangleth himself with the affairs of this life; that he may please him who has chosen him to be a soldier",

citing certain chapters and verses from the Books of Exodus and John. He also stated in answer to the second part of Question 2 in Series II:

"I do believe God's laws are supreme and above any law that might conflict therewith. I believe in and obey all laws of the land that do not conflict with God's law. Christians are comissioned (*sic*) to follow in Christ's footsteps",

citing chapters and verses from the Books of 1st Peter, Matthew, Mark, Acts, and Corinthians. In explaining how, when and from whom he had received the training and belief which was the basis of his claim, he stated,

"Home training; studying the Bible & association with, Marshal, Tex., Central Unit Congregation of Jehovah's Witnesses".

In answer to Question 5 of Series II, reading, "Under what circumstances, if any, do you believe in the use of force?" he replied, "To protect Family and Property: Exodus 22:2". Responding to the question as to whether he had ever given public expression, written or oral, to his views, he replied,

"Converse with various members, also, I am looking forward in the near future, to being immersed in a public symbol of my dedication to Almighty God".

At a later point he also stated, "I plan to engage in the Ministry in the near future."

Shortly after defendant filed his SSS Form 150, the Board considered it carefully. The Board Clerk, Mrs. Baggett, discussed the matter with Captain Russell J. Horn, Legal Advisor in State Selective Service Headquarters, who wrote

a memorandum regarding their conversation, as follows:

"Mrs. Baggett from Local Board No. 64 called for advice concerning subject registrant. He was classified I-A on November 7, 1952, examined and found acceptable on May 7th, 1953, and ordered for induction March 8, 1954 for April 7, 1954. Subject registrant talked to the clerk a number of times but did not mention his conscientious objections to war. After he received his order for induction he requested an SSS Form 150 and filled it out and returned it with a request for consideration as I-O.

"The local board does not feel that he is entitled to I-O but they do not want to appear unjust, nor do they want to commit a procedural error.

"Mrs. Baggett was told that the local board was correct in allowing subject registrant to submit the SSS Form 150 and that they should give the claim careful consideration. However, the prohibition against reopening after the induction order is issued will prevent them from reopening unless they find a change in circumstances beyond the control of the registrant. If the local board felt that the induction would result in great injustice they could request the State Director to permit them to reopen. It was suggested that the local board place a statement in the file to show that they had considered the claim, and if they do not reopen, they should furnish a short summary of the situation for the benefit of the armed forces to show that proper consideration was given to his claim. She was told that he may be able to persuade the armed forces to place him in the same category as the I-A-O men after he gets in the service, as they have a procedure for accomplishing that result."

Mrs. Baggett reported Captain Horn's instructions to the Board, which considered them on March 22, 1954, and concluded that because of Regulation 1625.2 (2) they could not reopen defendant's classification, because he had been ordered on March 8, 1954, nearly two weeks before filing his claim, to report for induction. They further found, inferentially at least, that there had been no change in the registrant's status resulting from circumstances over which he had no control, and that he was not sincere in his claim.

In keeping with this action, and the Regulations, on March 25, 1954, the Board wrote defendant as follows:

"Your action of filing SSS Form 150 Special Form for Conscientious Objector has been taken before the board, and upon advice from State Headquarters we are to inform you that there will be no action taken, and you will be required to report as previously ordered on March 8th, 1954.

"There will be included in your file a statement to the induction center that you filed such information."

Following this, defendant made no effort to obtain a personal appearance before the Board, did not file any supporting documents, did not request an appeal and no one else offered to substantiate his claim for a change in classification.

On April 7, 1954, defendant failed to report for induction at the appointed hour, but later that day appeared at the Board office and advised the Clerk that he was late because of car trouble. He then was told that a new order to report for induction on May 3, 1954, would be issued. At this time he made no further claims with respect to his conscientious objector status.

On April 8, 1954, a new notice to report for induction was sent, and on May 3 he actually reported and was sent to the induction center in Shreveport, Louisiana. There, after signing various pre-induction forms, he refused to take the "one step forward" and was reported as a violator. This prosecution followed.

Now, the applicable law, as we appreciate it:

■ Defendant's first and fourth points in his motion for acquittal as described above, may be disposed of quickly: To say there was no evidence to show his guilt, as he contends, would be to gainsay the plain, uncontradicted, believable facts. He was a registrant; he was ordered to report for induction; he refused to be inducted. If there is no substance to his other points—as we shall demonstrate shortly—he is guilty as charged. The alleged failure of the Board to post the names and addresses of advisors to registrants is not borne out by any evidence. In fact, the only evidence on that subject—the testimony of the Board Clerk, Mrs. Baggett—showed that this was done. Consequently, points one and four of the motion are totally without merit.

■ Points two and three are equally unmeritorious. The Board's action, in refusing to reopen and reclassify defendant as a conscientious objector, was not arbitrary or capricious; was not without a basis in fact; was not an abuse of its discretion; and did not deprive defendant of due process of law: The Board was not required to accept at face value defendant's belated subjective claims. Indeed, it was the Board's duty to test those claims by the available objective facts, and that it did. In doing so it could have given, and obviously did give, great weight to defendant's past conduct; his failure, on any occasion until the very last, to assert his alleged beliefs; his twice repeated efforts—one formal, and the other informal—to obtain deferment on other grounds; his waiting until eleven days after the induction notice to claim conscientious objection for the first time; his failure to produce even the slightest substantiation of his claim; his failure to request a personal appearance before the Board; and his failure to show that he had given prior public expression to his views; all of which could and must have convinced the Board that he was insincere, and that this was simply a last-ditch effort to escape his duty. Not only was there a "basis in fact" for the Board's refusal to reopen and reclassify; the objective evidence was overwhelmingly against such action.

This case, in our judgment, is even stronger against defendant than were the facts in the Witmer case, supra [348 U.S. 375, 75 S.Ct. 395], for Witmer claimed to be a conscientious objector in his answers to his original questionnaire. In that case the Court disposed of the question in the following language:

"Petitioner argues from this that there was no specific evidence here incompatible with his claimed conscientious objector status. But in Dickinson the registrant made out his prima facie case by means of objective facts—he was a 'regular or duly ordained minister of religion.' Here the registrant cannot make out a prima facie case from objective facts alone, because the ultimate question in conscientious objector cases is the sincerity of the registrant in objecting, on religious grounds, to participation in war in any form. In these cases, objective facts are relevant only insofar as they help in determining the sincerity of the registrant in his claimed belief, purely a subjective question. *In conscientious objector cases, therefore, any fact which casts doubt on the veracity of the registrant is relevant. It is 'affirmative evidence * * * that a registrant has not painted a complete or accurate picture * * *.'* Dickinson v. United States, supra, 346 U.S. at page 396, 74 S.Ct. [152] at page 157. In short, the nature of a registrant's prima facie case determines the type of evidence needed to rebut his claim. If the issue is the nature of his activities, as in Dickinson, the evidence providing 'basis in fact' must tend to show that his activities are other than as stated. *If, as here, the issue is the registrant's sincerity and good faith belief, then there must be some inference of insincerity or bad faith.*

"Since Witmer stated his beliefs with apparent sincerity, and since we find no indication anywhere in the record that his demeanor appeared shifty or evasive or that his appearance was one of unreliability, *we must examine the objective facts before the Appeal Board to see whether they cast doubt on the sincerity of his claim.*

"We note that when Witmer asked his Board for classification as a farmer, he knew that the land involved in his request had not been cultivated for 23 years, save for a few acres used for family purposes. *At that time, he swore that the ministerial classification did not apply to him.* Yet in March—after he knew his claim for exemption as a farmer had been denied—he just as fervently claimed he was a full-time minister. Furthermore, *although he asserted his conscientious objector belief in his first exemption claim,* in the same set of papers he promised to increase his farm production and 'contribute a satisfactory amount for the war effort.' Subsequently, he announced 'the boy who makes the snowballs is just as responsible as the boy who throws them.' *These inconsistent statements in themselves cast considerable doubt on the sincerity of petitioner's claim. This is not merely a case of a registrant's claiming three separate classifications; it goes to his sincerity and honesty in claiming conscientious objection to participation in war. It would not be mere suspicion or speculation for the Board to conclude, after denying Witmer's now-abandoned claims of farmer and minister, that he was insincere in his claim of conscientious objection. Even firemen become dubious after two false alarms. Aside from an outright admission of deception—to expect which is pure naivety—there could be no more competent evidence against Witmer's claimed classification than the* inference drawn from his own testimony and conduct. There are *other indications* which, while possibly insignificant standing alone, in this context help support the finding of insincerity. *Among these, is petitioner's failure to adduce evidence of any prior expression* of his allegedly deeply felt religious convictions against participation in war.

"With due regard for the policy of Congress, which was to make review within the selective service system final in all cases where there was conflicting evidence or where two inferences could be drawn from the same testimony, we cannot hold that petitioner was wrongfully denied the conscientious objector classification. *In short, there was basis in fact for the Board's decision.*" (Emphasis supplied.)

As shown by the quotation, the Witmer case clearly is controlling and decisive here. Moreover, even though the minute entry of the Board's action on March 22, 1954, states that it "Refused to consider Form 150", the evidence clearly shows that it did give careful consideration to the claim, even to the extent of asking for advice from the legal officer at State Selective Service Headquarters. This, according to the Witmer case, was enough:

"Petitioner also complains of the local Board's action in not formally reopening his case at the March 19, 1951, meeting when he filed his application for reclassification as a minister. According to the testimony of the clerk of the Board, the Board chairman had stated that the case was out of their hands because petitioner had taken an appeal. *The record of this hearing, however, shows that Witmer did offer his proof, and that the Board did discuss the matter. The chairman then told Witmer that the new evidence he submitted did not entitle him to a ministerial exemption. It is true that § 1624.2(b) and (c) of the regulations, 32 CFR (1949 ed.), requir-*

*ed that the case be reopened and the registrant reclassified. However, in view of the concurrent findings of the trial judge and the Court of Appeals that there had, in fact, been a reconsideration of Witmer's claims and that he was then personally advised of his continuance in the I-A classification, we think the command of the regulation to reopen and reclassify was honored, even though the Board's action was not tagged with these words. In this state of the record, the contention of Witmer narrows down to mere cavilling. * * *"* (Emphasis supplied.)

The advice given to the Board by Captain Horn was sound. It was based on section 1625.2 of the Regulations, which reads:

"The local board *may* reopen and consider anew the classification of a registrant (1) upon the written request of the registrant, the government appeal agent, any person who claims to be a dependent of the registrant, or any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, if such request is accompanied by written information presenting facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; or (2) upon its own motion if such action is based upon facts not considered when the registrant was classified, which, if true, would justify a change in the registrant's classification; *provided, in either event, the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction (SSS Form No. 252), unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."* (Emphasis supplied.)

The Board, in this situation, obviously was justified in not finding that defendant's change of status, if any, was due to circumstances beyond his control. In United States v. Schoebel, 7 Cir., 201 F. 2d 31, 32, a case practically on all fours with this one, the defendant did not claim a conscientious objection against military service until eight days after receiving his order to report for induction. The Court affirmed his conviction and upheld the validity of section 1625.2, saying:

"The burden is upon a registrant to establish his eligibility for deferment or exemption to the satisfaction of the local board, and to file a timely claim therefor. Deferment being a privilege, it may be abandoned by the holder like any other personal privilege. United States v. Rubinstein, 2 Cir., 166 F.2d 249, 258, certiorari denied 333 U.S. 868, 68 S.Ct. 791, 92 L.Ed. 1146."

To the same effect is Skinner v. United States, 9 Cir., 215 F.2d 767, certiorari denied 348 U.S. 981, 75 S.Ct. 572.

In his brief defendant argues that a change in the human conscience may occur involuntarily at any time, that this is what happened to him, and accordingly, that his change of religious belief occurred when he claims it did because of circumstances beyond his control. The objective evidence did not show that. Instead, it showed convincingly that he simply was trying to evade military service, by hook or by crook. In the Schoebel case, supra, the Court said:

"On oral argument before this court defendant's counsel suggested that conscientious objections resulting from the promptings of a registrant's conscience would be a change in status over which the registrant had no control. *We cannot acquiesce in such a strained interpretation of the regulation. There was no other claim of a change in status. The board did not find any change in defendant's status, and therefore in failing to reopen defendant's classi-*

*fication it did not exceed its powers or act in an arbitrary manner."* (Emphasis supplied.)

■ While the motion for acquittal asserts that sections 1625.2 and 1625.4, of the Regulations, are in conflict with section 6(j) of the Act, and consequently are invalid, no authorities have been cited to support the assertion. We have compared these sections of the Regulations and the Act and find no such conflict. We have noted also that while defendant contends he was denied the right to appeal by the Board's refusal to reopen, the Act and Regulations unqualifiedly provide for such an appeal:

"* * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sustained by the local board, be entitled to an appeal to the appropriate appeal board. * * *" Section 6(j).

Section 1626.2 (a) provides:

"The registrant, any person who claims to be a dependent of the registrant, any person who prior to the classification appealed from filed a written request for the current occupational deferment of the registrant, or the government appeal agent may appeal to an appeal board from any classification of a registrant by the local board except that no such person may appeal from the determination of the registrant's physical or mental condition."

Besides, the point is moot because defendant did not ask for, or in any other manner try to take, an appeal. Neither did he seek to have the Board appeal agent, the State Director, or the National Director take an appeal for him. Section 1626.1, 2.

Defendant has cited several Circuit and Supreme Court decisions which he contends are supportive of his position. We shall not burden this opinion by analyzing each of them. It is sufficient to say that they plainly are not applicable to this case.

For these reasons the motion for acquittal is denied and defendant is found guilty as charged. Arrangements for sentence at a later date will be made.