UNITED STATES of America, Plaintiff,

v.

Wane William COON, Defendant.

No. Cr. 49-57.

United States District Court
D. Utah, Central Division.
July 1, 1957.

A. Pratt Kesler, U. S. Atty., Salt Lake City, Utah, C. Nelson Day, Asst. U. S. Atty. for Dist. of Utah, Salt Lake City, Utah, for plaintiff.

Gayle Dean Hunt, Salt Lake City, Utah, for defendant.

CHRISTENSON, District Judge.

The defendant, Wane William Coon, was charged by indictment [1] with violation of 50 U.S.C.A.Appendix, § 462(a),

---

1. "The Grand Jury Charges:

"That on or about the 9th day of November, 1956, Wane William Coon, being a person charged with the duty of carrying out the provisions of the Universal Military Training and Service Act of 1948, as amended, and the rules, regulations, and directions made and given thereunder, did at Salt Lake City in the Central Division of the District of Utah knowingly fail, neglect and refuse to perform a duty required of him under and

to which he entered a plea of not guilty. Immediately preceding the trial he was permitted to withdraw this plea in order to interpose a motion to dismiss the indictment, which was made upon the following alleged grounds: (1) For want of jurisdiction of the Court to prosecute the defendant because the offense, if any, was committed in the State of South Dakota and not in Utah; (2) that the defendant was denied due process in that the local board in forwarding his file to the state board of appeal submitted to that board a summary containing prejudicial arguments, all without notice to the defendant, opportunity for hearing, or opportunity to present his arguments for reclassification, and that as a consequence, his appeal was denied; (3) that the order to the defendant to report for work in Utah was void because its regular form was altered to have him report directly to the hospital rather than to report for further orders to the local board.

Defendant's motion was denied. His plea of not guilty was renewed. In writing he waived trial by jury in accordance with Federal Rules of Criminal Procedure, rule 23(a), 18 U.S.C.A. Trial has been had before the Court to which the defendant has again submitted upon the testimony and exhibits received the foregoing contentions as well as the contention that there is no competent evidence to support the determination of the local and appeal boards that he was not a minister within the exemption provided by 50 U.S.C.A.Appendix, § 456(g).

The proceedings of the local board with respect to this registrant were extensive. Some forty-eight separate letters, meetings, or other actions are reported in the minutes received in evidence, and the file of documents is thick. It seems enough to note generally here, before turning to the specific matters

involved in the defendant's contentions, that on September 5, 1951 the defendant submitted to Local Board No. 14, Winner, South Dakota, a classification questionnaire in which he represented himself to be not physically or mentally disqualified for service in the Armed Forces; he was, on September 12, 1951, by the local board classified as I–A; on July 9, 1952 he was reclassified as III–A (hardship) because of dependents; on January 13, 1954 the classification I–A was reinstated; on February 11, 1954 he was again classified as III–A; on February 26, 1954 he was ordered to report to the local board for Armed Forces physical examination on March 8, 1954; on the latter date a report of such examination was made; a "certificate of acceptability" for service was filed with the local board on March 10, 1954; on July 14, 1954 he was reclassified as I–A, and on June 24, 1955, by action of the State Board of Appeal, he was reclassified as I–O (conscientious objector) by reason of which latter classification he was ordered to report to the Salt Lake County General Hospital, which he failed to do.

Now, more in detail concerning the facts on which a decision in this case must turn: In the answer to the original classification questionnaire, the defendant indicated that he had a conscientious objection to war, and he later filled out the special form for conscientious objectors. No evidence was submitted to the board for this classification and the claim was rejected as "not substantial". In 1954, after he had been advised that by reason of his brother's return from the Army, he could not be continued in the hardship category, he requested a change of classification from I–A to IV–E (an obsolete designation but intended to refer to the classification now known as IV–D.)[2]

in execution of said Act and the rules, regulations and directions made pursuant thereto, to wit, report to the Salt Lake General Hospital at 2033 South State Street in said Salt Lake City for civilian hospital work contributing to the main-

tenance of the National health, safety, and interest at said hospital, in violation of Section 462(a), Title 50 App., United States Code."

2. He stated that "this change was planned sometime back when I planned and

On July 21, 1954, he wrote a letter to the local board at Winner, South Dakota, requesting the re-opening of his classification and asserting that he was entitled to classification as a conscientious objector and as a minister and also that he was still entitled to a III–A classification because there had been no change in his dependents since 1952.[3] As a result of this letter the question of his classification was opened, but a ruling was made and noticed retaining the defendant in I–A. Thereafter, a letter was received from the registrant dated August 20, 1954 requesting a change of classification, and on September 24, 1954 the board notified the defendant that his

request for change of classification had been interpreted as a request for appeal and that his file was being transmitted to the state board of appeal. On September 24, 1954 the local board forwarded to the state board a "summary" of the record of the local board and also transmitted its file.

The Court has carefully examined this summary and has concluded that it was clearly factual and fair, with the possible exception of the following language which will be discussed hereinafter: "It appeared he did not care which classification he received as long as he was not drafted." [4] In a letter dated August 12, 1954 to the defendant, transmitting no-

made arrangements to spend all my time in the ministerial work." He submitted a number of affidavits indicating his activities as a member of the Congregation of Jehovah's Witnesses of Nampa, Idaho to which community in the meantime he had moved. One affidavit indicated that he was ordained a minister in October, 1952 and another that he "became immersed" in October, 1952.

3. "I request that you reopen my classification for the following reason.

"About Dec. 1951 I mailed a conscientious objector Form with your Local Board. The Board failed to act on it and classified me in 1–A. Shortly thereafter I requested a change from 1–A because of having dependents as my older brother was inducted into the armed forces.

"Prior to 1951 I was associated some with Jehovah's witnesses and attended their bible school when I could. However since coming to Nampa Idaho I have had the opportunity to attend their bible school regularly. As a result of the knowledge gained I have dedicated my life to the service of the Almighty God. I have been working as a minister (part time) since 1952 preaching the good news of the Kingdom of God, while being employed by the Pacific Fruith Express Company five days a week to support myself mother and brother.

"According to section 6(g) of the act of public law 759 and section 1622.19 of the regulations I am entitled to 4–D accorded to ministers of religion.

"I am also entitled to 4–E as a conscientious objector. Section 1622.20 (due to my lack of bible knowledge I stated in the conscientious form filed in 1951 that I would do non-combatant duty. This,

however, no longer hold true). According to the scriptures we must be entirly neutral regards the the affairs of this world. 2 Tim. 2:3, 4 "Thou therefore endure hardness as a good soldier of Jesus Christ. No man that warreth entangleth himself with the affairs of this life; that he may please him who hath choosen him to be a soldier." I cannot be in the army of the living God and at the same time serve in the army of any nation.

"I am still entitled to 3–A classification because there has not been any change in my dependents since 1952.

"If you need additional information regards my religious training and work as a minister I will be glad to furnish you with same.

"Please advise me by return mail wheather the request to reopen my classification will be granted."

4. This statement was made in the following context: "Registrant was placed in a I–A on 14 June 1954. A letter received from him on 26 July 1954 requested one of three classifications—a IV–D as minister; a IV–E as conscientious objector or a III–A on dependency. It appeared he did not care which classification he received as long as he was not drafted."

It was further stated in the summary that:

"1. He did not qualify for a IV–D as a minister as there was no proof to support his claim and no evidence of his being an ordained or regular minister or that he was a student preparing for the ministry under Section 1622–43 of the Selective Service Regulations.

"2. (Reference here was made to the I–O classification which appears immate-

tice of classification as I–A, the statements later contained in this summary, with the exception of the sentence quoted immediately above, were reported to the registrant as reasons for the board's action.

On June 24, 1955 the file was returned from the board of appeal to the local board with a minute showing that the defendant had been reclassified as I–O, the action of the board of appeal being unanimous. The defendant was duly notified of this classification.

Repeated extensions of time were granted for the defendant to obtain civilian employment acceptable to the board, he having indicated that he was endeavoring to find work that would be suitable. Finally, the board was insistent that he attend a meeting to bring the matter of employment to a head. On December 7, 1955 the defendant notified the board that it was impossible for him to attend such a meeting. He was then residing in Nampa, Idaho. On May 14, 1956 the local board advised the defendant by letter that it did not consider that the information he had submitted in April, 1956 concerning his health and family obligations justified the opening of his case and it transmitted to him a standard application form for work at the Salt Lake County General Hospital at Salt Lake City, Utah. Request was

made by the local board that he apply for employment there and he was advised "that if you fail to do so you will be ordered to a suitable position in accordance with the Selective Service Regulation." On June 25, 1956 the defendant completed the application form and returned it to the hospital. He listed therein his "trade of (sic) occupation" as "Dairyman", and "type of work wanted" as "Janitor". Under "previous employment" he listed only "Pacific Fruit Express, Nampa" and "Dairy farming— Own Place." He listed as his religion "Jehovah's witnesses."

On October 23, 1956 there was issued and mailed to the defendant by the local board an "Order to report for civilian work * * *." From the regular printed form (SSS Form 153) there was stricken out the usual direction to report in the first instance to the local board for further instructions to proceed to the place of employment, and the following was inserted: "You are ordered to leave Nampa, Idaho in sufficient time to enable you to report to the hospital named above on the 9th day of November, 1956." [5]

■ The evidence without doubt establishes, and the Court finds, that the order to report to the Salt Lake County General Hospital was received by the defendant and that he knowingly and wilfully failed to comply with that order.

---

rial now as the appeal board did so reclassify him.)

"3. He was no longer qualified for a III–A classification on a hardship basis, as his older brother, Kenneth should be able to take his place in the support of the family."

5. The body of the order containing the change was as follows:

"Having been found to be acceptable for civilian work contributing to the maintenance of the national health, safety, or interest you have been assigned to hospital work located at Salt Lake County General Hospital, 2033 South State Street, Salt Lake City 15, Utah. You are ordered to leave Nampa, Idaho in sufficient time to enable you to report to the hospital named above on the 9th day of November, 1956.

"You are ordered to report to the local board named above at ―― m. on the ―― day of ――, 195―, where you will be given instructions to proceed to the place of employment. (This paragraph was stricken out.)

"You are ordered to report for employment pursuant to the instructions of the local board, to remain in employment for twenty-four (24) consecutive months or until such time as you are released or transferred by proper authority.

"You will be instructed as to your duties at the place of employment.

"Failure to report at the hour and on the day named in this order, or to proceed to the place of employment pursuant to instructions, or to remain in this employment the specified time will con-

Under date of November 5, 1956 he did write to the board again requesting a reopening of his case. [6] This letter, however, was not received by the board until November 13, 1956 which was four days after he was ordered to report to the hospital. Defendant's testimony leaves no room for doubt that he refrained from reporting because of his view that he should not submit to the order. The only possible bearing the letter could have would be to lend color to his present contentions that if he had been directed to report in the first instance to the local board rather than directly to the hospital, a physical examination there might have resulted in a reopening of his case or an authorized delay in proceeding to the hospital. No evidence was offered at the trial to substantiate such possibility, but the matter will be further noticed in a discussion of the change in the printed form.

 I adhere to my pro forma ruling prior to the trial that the indictment states an offense within the jurisdiction of the Court and is sufficient as against the motion to dismiss interposed by the defendant. A similar conclusion is reached on the evidence, that venue was properly laid in the District of Utah within which the hospital is located. So much is settled by Johnston v. United States, 351 U.S. 215, 76 S.Ct. 739, 100 L.Ed. 1097; see also United States v. Anderson, 328 U.S. 699, 66 S.Ct. 1213, 90 L.Ed. 1529.

 It was proper for the local board to prepare a summary for submission to the appeal board with the file. Such a summary is intended primarily to cover information considered by the local board which does not appear in the written information on file. § 1626.13 of the Regulation, Title 32, C.F.R. p. 333. A prior regulation, Regulation 627.13, mentioned in United States ex rel. Kulick v. Kennedy, D.C.D.Conn.1946, 66 F.Supp. 183; Id., 2 Cir., 157 F.2d 811, reversed on other grounds 332 U.S. 174, 67 S.Ct. 1588, 91 L.Ed. 1982, rehearing denied 332 U.S. 785, 68 S.Ct. 31, 92 L.Ed. 368, apparently has been rescinded but its admonition that "in preparing such a summary the local board should be careful to avoid the expression of any opinion concerning information in the registrant's file and should refrain from including any argument in support of its decision," continues to require consideration from the standpoint of due process.

It seems manifest that the local board may fairly summarize its action for the convenience of the appeal board and in order that the bases of its rulings will be made clear. But the local board has no right under the guise of a summary to bring to the attention of the board of appeals and to withhold from the registrant views prejudicial to his position, particularly where they are not reflected in information already appearing in the file and concerning which he has no notice or opportunity to be heard.

 Can it be said here that the comment of the board under the circumstances violated established rules, or principles of fairness, to the prejudice of the defendant so as to constitute a deprivation of due process? This seems to be the question to be applied by the courts rather than whether there was a mere irregularity or an insubstantial or non-prejudicial departure.

In the abstract and out of context, a statement that a registrant cared not

stitute a violation of the Universal Military Training and Service Act, as amended, which is punishable by fine or imprisonment, or both."

6. " * * * as I have been under a doctor's care for sometime for my heart and also my spinal column. I request a physical examination because of these facts. I will supply additional proof if necessary."

The minutes of the board show with respect to the physical examinations, in addition to the regular pre-induction examination and the certificate of acceptability mentioned above, that on July 30, 1956 a letter was received from the registrant requesting "final physical exination" before reporting for civilian work, and also requested the reopening of his classification.

what classification he was given so long as he was not drafted, subject as it might be to inferences that this attitude had been indicated positively through general contacts or conferences with the board, could well prejudice a registrant's contention on appeal that in fact and in law he was entitled to exemption as a minister. In the context in which the statement of the board appeared, however, it is clear that it had reference solely to the defendant's letter as it appeared in the file. Indeed, the defendant's own letter might be fairly stated to have indicated substantially that. In it the defendant claimed that he was entitled to classification as a minister of religion, that he was "also entitled to a IV–E as a conscientious objector," and that he was "still entitled to a III–A classification." In discussing his increasing understanding of his religious duties he quoted from scripture to illustrate inconsistency between his beliefs and service "in the army of any nation." But whether the comment was fully supported by the letter or not, it purported only to represent the local board's construction of the letter. The letter, itself, was clearly the basis of the comment; the letter was before the board of appeals in connection with the comment. There was no request by, or withholding from, the defendant of any information or opportunity of further clarification concerning this interpretation which he himself had invited. Moreover, viewed as a whole and in relation to the entire record the local board's summary was reasonably objective and factual and did not substantially depart from legitimate functions. Cases in which comments of an agency uncommunicated to the person involved have been held prejudicial seem readily distinguishable. Sheats v. United States, 10 Cir., 1954, 215 F.2d 746; United States ex rel. DeGraw v. Toon, 2 Cir., 1945, 151 F.2d 778; Brewer v. United States, 4 Cir., 1954, 211 F.2d 864. Other authorities seem more nearly in point on the controlling principles. Eagles v. United States ex rel. Horowitz, 329 U.S. 317, 67 S.Ct. 320, 91 L.Ed. 318;

Reap v. Shambora, 5 Cir., 1957, 241 F.2d 803; United States v. Nugent, 346 U.S. 1, 73 S.Ct. 991, 97 L.Ed. 1417; United States ex rel. Kulick v. Kennedy, supra; United States v. Moore, 7 Cir., 1954, 217 F.2d 428, reversed on other grounds 348 U.S. 966, 75 S.Ct. 530, 99 L.Ed. 753; United States v. Hein, D.C.N.D. Ill.E.D.1953, 112 F.Supp. 71.

 It is my opinion that the order of the local board for the defendant to report directly from his residence to the hospital in Salt Lake City rather than first to report to the local board at Winner, South Dakota, was not invalid. The Regulation 1660.20(d) provides that "local board, with the approval of the director of Selective Service, shall order the registrant to report for civilian work * * *." Title 32, C.F.R. p. 374. Defendant's argument that the regulations contemplate the use of printed forms which are incorporated by reference in the regulations finds support in Regulation 1606.51, Title 32, C.F.R. p. 293. Nonetheless, strict compliance could not be deemed jurisdictional or mandatory as between the board and the registrant. Administratively, there was provision for the modification of forms, and a tacit approval by appropriate authority for such modification in the instant case which the defendant may not question. Such a departure is not shown in any way to have been prejudicial, nor did it involve any jurisdictional defect, United States v. Turner, 2 Cir., 1957, 244 F.2d 404. Defendant's argument that if he had been ordered to report to the local board rather than directly to the hospital he might have been found physically disqualified or might have been granted a further extension of time to report, cannot be accepted. There was no showing at the trial or at any time that his physical condition was not appropriate to civilian service, and it is clear that the reason he failed to report was not in any way related to his physical condition but rather because of his unwillingness to comply with the order because of his religious scruples. See Jessen v. United States,

10 Cir., 1957, 242 F.2d 213 (particularly syl. 6). His claim that he was entitled to further physical examination as a matter of right is not borne out by the regulations which in the case of those ordered to civilian work do not require physical examinations after the Armed Forces physical examination. See Regulation 1628.10 et seq., Title 32, C.F.R. p. 341 et seq.; Miller v. United States, 6 Cir., 1948, 169 F.2d 865; Peterson v. United States, 6 Cir., 1949, 173 F.2d 111, certiorari denied 337 U.S. 925, 69 S.Ct. 1169, 93 L.Ed. 1733. I have also considered a point not raised, whether the travel expense which the local board could have allowed the defendant from Winner to Salt Lake City had he been first ordered to report to his local board (See Regulation 1660.21) involved possible prejudice, I have concluded that the change minimized any burden to the defendant by obviating the necessity of a considerably longer trip from Nampa, Idaho to Winner at his own expense, and that having made no request for a travel allowance he has no cause to complain.

█ Finally, on the question of whether the findings of the draft board that the defendant was not entitled to exemption as a minister had no basis in fact, it is believed that the recent case of Bradshaw v. United States, 10 Cir., 1957, 242 F.2d 180, is decisive. Assuming that his claim to minister status is disputable, at least it must be recognized that there is substantial evidence to support the board's adverse determination. His claim that he was a minister as far as the file discloses was first made in August, 1954 in connection with a claim to another classification. Supporting his claim, he filed with the board affidavits purporting to show that he became a minister as early as 1952. He testified at the trial before this Court variously that he first made his claim to minister status about July, 1954; that the date of his "immersion" was October, 1952 and that his ministership began at the time of his immersion; that he thought he became a minister in 1953; at another point 1953 or 1954; at an-

other point in November, 1954; that he started to do minister work in 1952; that his immersion would have been after November, 1954 but that he recognized himself as a minister at the time he personally dedicated himself. He further testified at the trial that his church activity totaled 27 hours a month and that his secular employment was 160 hours; that in 1953 the figures were 65 and 160 hours respectively; in 1954, 102 and 120 hours, respectively; 1955, 105 and 120 hours; 1956, 98 and 140 hours; 1957, 80 and 140 hours. Church work included preaching, study and service. Preaching required 2 hours per month in 1952, 5 hours in 1953, 30 hours in 1954, 25 hours in 1955, 18 hours in 1956 and 18 hours in 1957.

While the information before the board rather than that initially presented to the Court is the controlling factor, it must be said that on the evidence before the Court there was substantial reason to question his claimed status, and the data before the board were less convincing.

In his application for employment by the Salt Lake County General Hospital in 1955 he listed his occupation as dairyman and his answers concerning his previous employment made no reference to employment as a minister. He first made the claim to minister status when his other claims to deferment or exemption had been rejected. The determination of Selective Service cannot be said to have been irrational and without basis of fact within the doctrine of Bradshaw v. United States, supra, and the cases cited therein. See also Jeffries v. United States, 10 Cir., 1948, 169 F.2d 86.

█ The Court is convinced that the defendant conscientiously objected to service in the Armed Forces. There is also evidence from which it could reasonably be found that on religious grounds he objected to civilian service under the compulsion of law. But such latter objections, however conscientious, do not exempt one from the obligation of the law which requires it. Such objec-

tions under the law are objections to the law itself, and involve the penal sanctions which have been invoked against the defendant.

The Court is convinced beyond a reasonable doubt, and hereby finds, that the defendant, being charged with the duty to obey, knowingly failed to comply with the valid order of Local Board No. 14, Winner, South Dakota, to report for work at the Salt Lake County General Hospital and is guilty of violating Title 50 U.S.C.A.Appendix, § 462(a) as charged in the indictment.

Time for sentence is hereby set for July 25, 1957 at 10 o'clock a. m. at which time the defendant is directed to appear.