**UNITED STATES of America**

v.

**Stanley Wade BRYAN.**

**No. Cr. A-24905.**

United States District Court
N. D. Georgia.
Feb. 7, 1967.

Charles B. Lewis, Jr., Asst. U. S. Atty., Atlanta, Ga., for plaintiff.

Paul E. Pressley, Atlanta, Ga., for defendant.

## MEMORANDUM OF DECISION

BLUMENFELD, District Judge.*

Stanley Wade Bryan stands charged with violating 50 U.S.C.App. § 462(a) because of his refusal to submit to induction as ordered by his local Selective Service Board.

The defendant concedes that he reported for induction on June 24, 1966 and refused to take the symbolic "one step forward" when his name was called for induction.

This case was tried to the court, after indictment and waiver of jury trial. The Government offered into evidence the defendant's entire Selective Service File and thereupon rested its case.

The defendant has moved for a judgment of acquittal contending that the order to report for induction was invalid because the classification given him by his local board has "no basis in fact." He contends that the board had no evidence before it which would support its denial of defendant's claim of classification as a 1-O conscientious objector.

* Sitting by designation.

To overcome his admitted failure to file an appeal from his 1-A classification, defendant claims in addition that he was deprived of his right to appeal by the action of the local board. Evidence in support of this alternative contention was introduced at the trial. A statement of what occurred is essential to an understanding of his contention.

## I.

In November of 1964, upon attaining the age of 18, Bryan registered with his local draft board as required by law. On December 10, 1964, his local board mailed him a Classification Questionnaire (Form No. 100). Defendant completed this form and returned it to his local board on December 21, 1964. On this form, he indicated that he was working 40 hours a week as a "Case labeler under classification of stockman" for a national clothing manufacturer. He wrote that he considered himself to be a minister who had been formally ordained as a Jehovah's Witness. He also claimed that he was a "Conscientious Objector" to war. In support of these assertions, Bryan revealed that he was an "assistant magazine and territory servant" and that he had "pioneered" from July 1 to July 31, 1962. He further indicated that he was "Arranging his affairs so as to be able to pioneer full time in the near future." These statements by him were sufficient to put the local board on notice that Bryan claimed a 1-O classification.

■■ While a request for classification as a conscientious objector solely because of alleged ministerial activities does not meet the requirements of the law, United States v. Coon, 153 F.Supp. 96 (D. Utah 1957), these statements by him were sufficient to put the local board on notice that Bryan claimed a 1-O classification. Although his request was somewhat ambiguously stated, it should have been liberally construed to state a request for a conscientious objector classification. See United States v. Derstine, 129 F.Supp. 117 (E.D.Pa. 1954); cf. United States v. Hagaman, 213 F.2d 86 (3d Cir. 1954).

It was apparently so understood by them for on December 21, 1964, the local board mailed Bryan a "Special Form for Conscientious Objector" (Form No. 150). This form was received back at the board on January 4, 1965. In this questionnaire, Bryan indicated that he claimed an exemption from both combatant and noncombatant training and service. He based this claim on his belief in a Supreme Being and the following statement:

"I as one of Jehovah's Witnesses and by means of association with them and through personal Bible study feel that I can never take part in the Armed Forces of this or any other country. For indeed to do so would mean compromising my Faith in Almighty God."

Furthermore in answer to a question regarding his belief in the use of force, Bryan responded:

"I believe that the only time I may use force is if and when instructed by Almighty God. In self defense, in procting [sic] my family and my 'brothers' Those having the same beliefs as I."

On this same questionnaire, Bryan listed his occupation as a "Labeler (Warehouse)" but commented:

"Job listed is a means of supporting myself but the ministry is my main occupation for which I receive no monetary compensation."

The next step was the receipt by Bryan of a SSS Form No. 110 informing him of a 1-A classification. This card was mailed on January 13, 1965. On this date the local board also sent Bryan the following letter:

"This is to advise you that at the Board meeting of January 13, 1965 the Board members did not grant you a 1-A-O or a 1-O classification.

"If you wish to appeal this classification of 1-A, this must be done within ten days, your file will then be sent to the Appeal Board."

Defendant took no appeal from this classification, although he testified at the trial that his failure to take an ap-

peal was a result of misinformation given him by an employee of his local board. This point, crucial to a decision in this case, will be discussed below.

## II.

Faced with the record which reveals that the defendant did not file an appeal or request for a personal appearance before the board within 10 days from the time he was classified 1-A, or from the date he was notified that his claim for exemption from combatant training and service because of his conscientious objections was not granted, the defendant contends that he was deprived of a right to appeal by the effect of the advice that an appeal would be fruitless which he received from the clerk at the local board.

Turning now to whether the defendant was induced to forego his right to appeal by reason of conduct attributable to his local board, nothing in the file of the board directly supports this. Bryan received his notice of classification on a Form 110—a postcard, one part of which sets forth the right to a personal appearance and/or an appeal. In addition the letter from his local board on January 13, 1965, informed him that he had 10 days to appeal his 1-A classification.

However, defendant testified under oath that he went to the office of his local board within a few days of receiving his 1-A classification. He went there "to see about taking an appeal." No list of advisors was posted in a conspicuous place. But he talked to a clerk of the board employed in the office. The clerk manifested a good deal of knowledge as to Jehovah's Witness cases, including the distinction among levels of Jehovah's Witness hierarchy. When he informed the clerk that he was not at that level of the Jehovah's Witness hierarchy known as "Pioneering," she advised him that any steps in an appellate process in his case would be fruitless. Pursuant to this "advice," defendant returned home and did nothing further either to perfect his

appeal or to request a personal appearance before the board.

The distinction between a classification as a minister (Class IV-D) and exemption as a conscientious objector (1-O) was still not clear to him for in a signed and witnessed statement given that day at the induction center, defendant revealed:

"P.S. I applied for a concientious [sic] objectors [sic] classification as a *minister* but my request was denied." (Emphasis added)

 One need not be a minister in order to qualify for a 1-O Classification—Conscientious Objector Available For Civilian Work Contributing to Maintenance of National Health, Safety, or Interest.[1] 32 C.F.R. Section 1622.14.

The question by the clerk, "Are you pioneering?" was relevant only to whether defendant was entitled to a IV-D classification as a minister. It had no bearing on a 1-O classification request.

The effect of the statement of the local board employee that it would be useless to take an appeal in defendant's case was such as to affirmatively mislead him as to his appeal rights.

On the back of the classification card (Form No. 110) he received was the statement in bold print:

"For Information And Advice, Go To Any Local Board"

Defendant did just that. He went to his own board. On arriving there, he found no list of advisors. When he asked someone whom he discovered there for advice, he was met with a question which showed some apparent relation to his problem. The reference to "pioneering" by the local board employee would tend to indicate that here was someone who was knowledgeable about the administration of the Selective Service Act. The question smacked of expertise. When the questioner went on to advise him that an appeal would be futile, defendant was justified in relying on her advice.

---

1. For a recent statement of requirements for a 1-O classification see United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965).

That he relied upon this advice can hardly be questioned. Unaware of any other course to follow thereafter, in his mind the only choice was "between the rock and the whirlpool," as shown by his refusal to submit to induction.

### III.

Thus the issue immediately confronting this court is whether or not defendant's failure to exhaust his administrative remedies because he was led by his local board to believe that an appeal would be futile should foreclose him from challenging the order of the board.

 It should be noted first that a court is not in any sense a super draft board, e. g., Witmer v. United States, 348 U.S. 375, 380, 75 S.Ct. 392, 99 L.Ed. 428, 433 (1955); its jurisdiction in Selective Service cases is limited to attacks on the jurisdiction of the Selective Service Boards themselves, virtually always on the grounds that there is absolutely no basis in fact for a particular finding of the board. Estep v. United States, 327 U.S. 114, 66 S.Ct. 423, 90 L.Ed. 567 (1945). Where all steps in the administrative process have been followed, the function of the District Court is laid down in Dickinson v. United States, 346 U.S. 389, 396, 74 S.Ct. 152, 98 L.Ed. 132, 138 (1953):

> "The task of the courts in cases such as this is to search the record for some affirmative evidence to support the local board's overt or implicit finding that a registrant has not painted a complete or accurate picture of his activities [so as to bring him within a statutory definition entitling him to C.O. status]."

In other words, a court is most reluctant to overturn any finding by a draft board, Dickinson v. United States, supra, and a court will honor the administrative integrity of the Selective Service administrative process by refusing to even look into a file if a registrant has not exhausted all of his administrative remedies. E. g., McGahee v. United States,

163 F.2d 875 (5th Cir. 1947); United States v. Wilson, 132 F.Supp. 485, 493 (W.D.La.1955). But see Moon v. United States, 220 F.2d 730 (5th Cir. 1955).

Rejecting the contention of the defendant that the record be tested by application of the rule laid down in Dickinson in order to determine the validity of the board's order on the merits, I have looked at two aspects of the file. First, the file corroborates the testimony of the defendant that he asserted a claim for a conscientious objector's exemption. Second, the lack of any indication by the board other than what can speculatively be inferred from its cursory refusal to grant a 1-O classification indicates that an appeal would not be frivolous. Whether it would be successful cannot be determined until the special statutory procedure, 50 U.S.C.App. § 456(j), has been employed.

 In considering whether the unexhausted administrative remedies available to a registrant have been forfeited it should be borne in mind that the classification process is not an adversary proceeding between a board and a registrant in which the slightest misstep will penalize a registrant. United States v. Greene, 220 F.2d 792 (7th Cir. 1955).

Courts have occasionally chosen to excuse a registrant's failure to perfect his appeal, and have held that a judgment of acquittal is appropriate where a particular registrant may have had an acceptable reason for not exhausting his remedies. E. g., Donato v. United States, 302 F.2d 468 (9th Cir. 1962), cert. denied, 374 U.S. 828, 83 S.Ct. 1868, 10 L.Ed.2d 1052 (1963), where a registrant had intended to take an appeal but was called away on a firefighting mission during the appeal period. See also United States v. Howe, 144 F.Supp. 342 (D.Mass.1956), where a draft board secretary erroneously informed a registrant that it was too late to reopen his case; the defendant was held to have been denied due process.[2]

2. The claim was raised at the present trial that the names of advisors were not post-

ed. The Howe case rested, inter alia, on the then-wording of Reg. 1604.41,

In this case the registrant received his classification notice on SSS Form 110, Revised 5-7-63. This card is intended to be severed by the applicant; one half is his official Notice of Classification which he must have on him at all times; the other half, which he may discard, advises him of his rights to a personal appearance and to an appeal. On the half which he retains in large capital letters is written "For Information And Advice, Go To Any Local Board." Since this card is mailed by the board itself, it can reasonably be read as representing that information and advice received at the local board is authoritative.

The right to a conscientious objector status is guaranteed by statute. 50 U.S. C.App. § 465(j).[3]

■ Since a board, in order to be within its jurisdiction, must have some basis in fact for a particular classification, and since in conscientious objector cases that basis almost always will rest on the sincerity of a registrant or on the depths of his beliefs, the personal appearance is perhaps a more crucial step than it is even for other types of registrants. For it is at this stage that any kind of personal "sizing up" of a registrant first takes place by the adminis-

trative machinery. Indeed, short of a registrant's failure to make a prima facie case, or short of evidence showing that certain statements by him are outright inaccuracies, it is difficult to imagine a meaningful decision on conscientious objector status being made without a personal hearing.

## IV.

■ Accordingly, the board's (albeit perhaps unauthorized) discouragement of applicant's perfection of his administrative rights deprived him of substantial due process, and accordingly rendered the order of the board invalid. United States v. Burlich, 257 F.Supp. 906 (S.D. N.Y.1966). He must be given an adequate opportunity to appeal. Pending appeal, an order to report for induction is void as issued in contravention of existing regulations. 32 C.F.R. Section 1626.41. Chih Chung Tung v. United States, 142 F.2d 919 (1st Cir. 1944). Such an order need not be obeyed. Refusal to obey an invalid order does not constitute a violation of 50 U.S.C.App. § 462(a).

A judgment of acquittal for the defendant Bryan should be entered, and it is so ordered.

---

which provided that "Advisors to registrants shall be appointed. * * *" In 1955 though, the regulation was changed to read, "Advisors to registrants may be appointed. * * *" Accordingly, the present case cannot rest on the grounds that no advisors were appointed. While it is no longer compulsory to appoint advisors, if the board through its employees undertakes to give advice that advice should be accurate.

3. "Nothing contained in this title * * * shall be construed to require that any person to be subject to combatant training and service in the armed forces of the United States who, by reason of religious training and belief, is conscientiously opposed to participation in war in any form. * * * Any person claiming exemption from combatant training and service because of such conscientious objections shall, if such claim is not sus-

tained by the local board, be entitled to an appeal to the appropriate appeal board. Upon the filing of such appeal, the appeal board shall refer any such claim to the Department of Justice for inquiry and hearing. The Department of Justice, after appropriate inquiry, shall hold a hearing with respect to the character and good faith of the objections of the person concerned, and such person shall be notified of the time and place of such hearing. * * * If after such hearing the Department of Justice finds that his objections are not sustained, it shall recommend to the appeal board that such objections be not sustained. The appeal board shall, in making its decision, give consideration to, but shall not be bound to follow, the recommendation of the Department of Justice together with the record on appeal from the local board."