James E. POWERS, Appellant,

v.

George T. POWERS, III, Major General, U. S. Army Commanding General, U. S. Army Air Defense Center, Fort Bliss, Texas, Appellee.

No. 25033.

United States Court of Appeals Fifth Circuit.

Sept. 11, 1968.

Richard T. Marshall, El Paso, Tex., for appellant.

Jamie C. Boyd, Asst. U. S. Atty, El Paso, Tex., for appellee.

Before COLEMAN and GODBOLD, Circuit Judges, and RUBIN, District Judge.

GODBOLD, Circuit Judge:

This case, like United States v. Bryan, 263 F.Supp. 895 (N.D.Ga.1967), con-

cerns a claim by a selective service registrant that he has been given erroneous and misleading information by the local board about his right to appeal from his draft classification, so as to deprive him of substantive due process and make invalid his order to report for induction. In *Bryan* the claim was successfully asserted as a defense to criminal prosecution for refusal to submit to induction. Here it is presented as the basis for a petition for writ of habeas corpus after induction.

The district court denied the writ on two grounds which the parties discuss before this court: that appellant had failed to exhaust his administrative remedies and that he had failed to apply for relief under paragraph 5–5 of Army Regulation 635–200.[1]

Appellant registered July 12, 1966.[2] He completed the standard classification questionnaire. In response to the question, "If you have any physical or mental condition which, in your opinion, will disqualify you from service in the armed forces, state the condition and attach a physician's statement," he replied, "Rheumatic heart condition. No money for physician's statement. Records may be obtained at William Beaumont Hospital."

Prior to classification appellant presented no evidence of his alleged physical condition. On August 29 the local board mailed appellant the usual card notifying him that he had been classified I-A.

(SSS Form 110). On the back of the form there were instructions covering the right, within 10 days after mailing of the notice, to file a request for a personal appearance before the local board or to file a written appeal. The body of these instructions was preceded by a heading, in larger type, "NOTICE OF RIGHT TO PERSONAL APPEARANCE AND APPEAL," and was followed by a notation at the bottom of the card, also in larger type, "FOR INFORMATION AND ADVICE, GO TO ANY LOCAL BOARD."[3]

According to the undisputed testimony of appellant and his brother, they went to the office of the local board to see the clerk of the board and complain of the classification. They were not allowed to see the clerk but instead talked to a secretary. The testimony was that when they tried to explain appellant's physical condition they were told that all registrants were routinely classified 1-A until the time of physical examination, that there could be no appeal of appellant's classification until his physical examination and at that time if the Army doctor found him physically unfit he would be reclassified, and that for appellant to protest his classification he would have to wait until his induction order (though it is not clear whether this latter statement was made then or at a later time).

No one from the board denied the testimony of appellant and his brother. The trial court made no credibility

---

1. "5–5. Erroneous induction. Commanders specified in section VI, chapter 2, are authorized to dispose of cases involving an individual's claim that prior to induction he was denied a procedural right, as provided by the Universal Military Training and Service Act, and was therefore erroneously inducted. All requests for discharge will be forwarded to the officer having discharge authority and, by him, to the Director, Selective Service System, Washington, D. C., 20435, for his recommendation. The officer having discharge authority will order the discharge of the individual or retain him in the service in accordance with recommendation made by the Director of Selective Service. * * *"

2. He was two years and eleven months delinquent in registering, but that does not alter the substantive principles at issue.

3. The Notice of Classification form has subsequently been changed to conform with the new regulations promulgated after 1967 amendments to the Universal Military Training and Service Act. The regulations now provide for a 30 day period after Notice of Classification is mailed to a registrant in which to ask for an appearance before one's local board or to appeal the classification. See 32 C.F.R. §§ 1624.1, 1626.2(c).

findings. The testimony is unclear as to whether the visit to the board at which the alleged misleading information was given took place within 10 days after the notice of classification was mailed. If in fact appellant did go to the board within the 10-day period and was given instructions, information or advice the substance of which was that he either must, or should, wait to appeal from or object to his classification, or wait to file evidence tending to show his classification was erroneous, until a time later than that allowed to perfect an appeal, then due process was not afforded him. The registrant could not on the one hand be held to strict compliance with the requirement of, and the time allowed for, exhaustion of administrative remedies [32 CFR 1624.1(a)] and at the same time be given instructions, information or advice by the board that the administrative remedy was not available or that pursuit of it was not necessary or should be delayed.[4]

There also is testimony that appellant described his rheumatic heart condition to the doctors at his preinduction physi-cal. Subsequently he obtained from a military hospital (where as a military dependent he had been hospitalized for a heart condition) partial records of his treatment.[5] He presented these records to the draft board and was notified to present them to the doctor at the time of induction. At his induction physical examination he presented these records and a statement from a civilian cardiologist, who had seen him one time a few days before, that he was then suffering from valvular heart disease due to rheumatic fever and was unfit for military service. Army physicians examined appellant and found him fit for service. He was inducted the next day, January 11, 1967. The petition for habeas corpus was filed January 13, 1967.

■ There must be findings of fact by the district court on whether appellant was given instructions, information and advice as he and his brother testified and if so whether this occurred within 10 days after his classification notice was mailed to him.[6] If the district court

4. We point out that if a board should maintain a generally uniform policy of the type Powers said was described to him, i. e., routine classification of all new registrants as 1–A plus advice to all who ask that they should or must present evidence of disability at the time of physical examination, the existence alone of such a policy would throw into doubt the right of the government to assert failure to exhaust administrative remedies as against all who know of the policy and rely on it regardless of whether they seek specific information and advice of the board.

5. The full records had been transferred and were not available. The partial record appeared to have covered one period of hospitalization for rheumatic fever. There was oral testimony that appellant had been taken to the military hospital by ambulance about twelve times because of his heart condition, and because of it had lost three years from school and spent one year in a wheelchair.

6. Prior to the 1967 amendments to the Universal Military Training and Service Act, the Act provided only that decisions of local boards, appeal boards, or the President "shall be final." Act of June 24, 1948, ch. 625, tit. I, 62 Stat. 604, § 10(b) (3). On June 30, 1967, the following language was added to § 10(b) (3):

"No judicial review shall be made of the classification or processing of any registrant by local boards, appeal boards, or the President, except as a defense to a criminal prosecution instituted under section 12 of this title, after the registrant has responded either affirmatively or negatively to an order to report for induction, or for civilian work in the case of a registrant determined to be opposed to participation in war in any form: *Provided,* That such review shall go to the question of the jurisdiction herein reserved to local boards, appeal boards, and the President only when there is no basis in fact for the classification assigned to such registrant." 50 App. U.S.C.A. § 460(b) (3).

While the literal language would seem to preclude review by habeas corpus, the legislative history of the added provision makes clear that the purpose of the amendment was to "reenunciate[s] the principle already in existing law that the courts cannot review the classifica-

finds against appellant on these issues, it should then consider and make appropriate findings and conclusions on the question whether under all the facts and circumstances the board was required to reopen appellant's classification or upon its refusal to do so was required to give him notice of right to appeal such refusal. See, 32 CFR §§ 1625.2–1625.14; United States v. Freeman, 388 F.2d 246 (7th Cir. 1968); Miller v. United States, 388 F.2d 973 (9th Cir. 1967); Olvera v. United States, 223 F.2d 880 (5th Cir. 1955).

The named defendant is shown as the United States Army Commanding General, United States Army Air Defense Center, Fort Bliss, Texas. The record does not show where appellant is presently stationed, so that issues of whether there is a proper party defendant and of whether the district court has jurisdiction over the proper defendant are matters that must be dealt with in the first instance at the district court level.

■ Appellant is not barred from relief by failure to pursue paragraph 5–5 of Army Regulation 635–200.[7] That paragraph concerns separation for convenience of the government where there has been induction arising from violation of pre-induction procedural rights, and the military must forward the file to the Director of Selective Service for his recommendation to retain or discharge and is bound thereby. The registrant must exhaust his remedies within the Selective Service System, a civilian agency. Habeas corpus is not available to him until induction. The remedy may not, after it becomes available, be conditioned upon another requirement of exhaustion through military channels.

"Congress entrusted the administration of the Selective Service System to civilian agencies, not to the military." Estep v. United States, 327 U.S. 114, 118, 66 S.Ct. 423, 425, 90 L.Ed. 567, 571 (1946).[8]

---

tion action of the Selective Service System until after a registrant has been ordered to report for induction and has responded either affirmatively or negatively to such an order." H.R.Rep. No. 267, 90th Cong., 1st Sess. (1967), 1967 U.S.Code Congressional and Administrative News 1308, 1310; see also Id. at 1333.

7.  See n. 1, supra.

8.  We decline to follow United States ex rel. Coltman v. Bullock, 110 F.Supp. 126 (N.D.Ill.1953) holding the inductee seeking habeas corpus must show that he has exhausted the remedy of an earlier and similar Army Regulation. Compare United States ex rel. Tomback v. Bullock, 110 F.Supp. 698 (N.D.Ill.1953), and United States ex rel. Ursitti v. Baird, 39 F.Supp. 872 (E.D.N.Y.1941).