**Norman Lloyd PETERSEN, Plaintiff,**

v.

**Ramsey CLARK, etc., et al., Defendants.**

**Civ. No. 47888.**

United States District Court
N. D. California.

Sept. 16, 1968.

See also, D.C., 285 F.Supp. 693; D.C., 285 F.Supp. 698.

Treuhaft & Walker, Oakland, Cal., for plaintiff.

Cecil F. Poole, U. S. Atty., San Francisco, Cal., for defendants.

## MEMORANDUM OPINION

ZIRPOLI, District Judge.

### INTRODUCTION

Norman Lloyd Petersen, plaintiff herein, seeks in effect a declaratory judgment that he was not under a lawful duty to report for induction into the armed forces of the United States on January 25, 1968. A brief factual history follows, with more complete facts included in the discussions of the issues to which they are relevant:

Plaintiff completed SSS Form 100 in 1961 and was classified I–A in 1962. In 1963, he received a II–S classification. In November, 1965, he was classified I–A and in December was ordered to report for induction in January. He was granted a I–S classification (to permit him to finish the school year in which he was then enrolled) and was again classified I–A in September, 1966. In October, 1966, he appealed his classification, requested a personal appearance, and was sent SSS Form 127 (Current Information Questionnaire). In January, 1967, he was sent SSS Form 150 (the form used to claim status as conscientious objector) which he had requested. On January 25, 1967, he met personally with three members of his local board. In June, 1967, the appeal board classified plaintiff I–A

and in July he was ordered to report for induction on July 26, 1967. In July he obtained another Form 150, having failed to complete the original form in January. With the assistance of an attorney, plaintiff completed the Form 150 he had received in January. On various dates following the submission of the Form 150, plaintiff's local board reviewed his "case"[1] and on each occasion refused to "reopen" his classification. The induction date was postponed on several occasions to permit plaintiff to attend a "courtesy interview" with his local board, with his attorney present, on December 11, 1967. The board again decided not to reopen plaintiff's classification and plaintiff was ordered to report for induction on January 25, 1968. On that day he refused to submit to induction.

## DISCUSSION

### Jurisdiction

The court has jurisdiction to entertain this action, U.S.Const., amend. 5; 28 U.S.C. § 1331; see "Order Denying Defendants' Motion to Dismiss" (filed herein on May 28, 1968, 285 F.Supp. 700).

### Standard to be Applied

■ The court agrees that the government's suggested standard of review, to which plaintiff has not objected, is appropriate: Does the board's determination have a basis in fact and did the board substantially comply with the applicable statutes and regulations?

### Evidence Outside the File

In the course of this action, plaintiff made several offers of proof. All are denied with the exception of the plaintiff's testimony concerning whether he was "misled" by the board at the January 25, 1967 meeting. The plaintiff's testimony is not admitted to determine whether the board had a basis in fact for its determinations. That must be measured solely from the registrant's file, inasmuch as that is all the board had before it when it made its determinations. However, insofar as his testimony purports to clarify the "summaries" of the personal appearance and courtesy interview, the testimony is being admitted.

■ The government strenuously urges the proposition that *no* evidence outside the registrant's selective service file should be admitted in a civil action to review the administrative action of a local board. The court recognizes that such is the usual rule applicable to judicial review of administrative proceedings. However, the court also notes that selective service administrative proceedings, unlike the usual ones, do not produce a verbatim transcript of testimony and do not result in written findings and conclusions of the administrative agency. Such considerations mitigate against the government's position and its objection to the testimony being considered for any purpose. That objection is now overruled. The court notes that the requirement of an adequate record for judicial review, albeit in a different context, has recently received the attention of the United States Supreme Court, In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L. Ed.2d 527 (1967), though this court does not consider *Gault* alone determinative of the issue in this case.

### The "1625.2" Issue

Defendants assert that the Form 150 ultimately filed by plaintiff in July, 1967 did not set forth a prima facie conscientious objector claim at least because it did not allege a post-induction-order change of circumstances beyond the registrant's control as required by 32 C.F.R. § 1625.2. Plaintiff contends (1) that § 1625.2 can and should be construed not to impose any time before which a conscientious objector can claim a "C.O." classification without a change in circumstances, and (2) that if § 1625.2 does impose some time bar to full con-

---

[1]. The word is used advisedly in light of the contentions of the parties centering on whether the review constituted a reopening of plaintiff's classification. Under der plaintiff's theory, the answer might depend on what in fact the board did review. See the discussion of the "Miller" issue below.

sideration of a C.O. claim, then the regulation is contrary to the statute creating the classification—50 U.S.C. App. § 456(j)—which statute imposes no time limitation within which a conscientious objector's claim must be measured.

The effect of the regulation is that one whose conscientious objector beliefs "crystallize" after his order to report for induction may claim the benefits of 50 U.S.C. App. § 456(j), whereas a "lifelong" C.O. who files Form 150 on the same day, for example, could not avail himself of the statute. The implicit justifications for such a result would appear to be at least two: First is the selective service system's interest in having claimants of C.O. status file their claims as soon as practicable or at least prior to being ordered for induction if possible; Second, it must be noted that if a C.O. claim at any time could *automatically* reopen a classification, a registrant could repeatedly delay his induction, since a reopening cancels an outstanding induction order, 32 C.F.R. § 1625.14.

Plaintiff points to SSS Form 127. Plaintiff asserts that since Form 127 (the Current Information Questionnaire) inquires into virtually every significant fact that might bear on classification other than conscientious objector beliefs, the court should conclude that 32 C.F.R. § 1625.2 was not meant to apply to claims based on 50 U.S.C. App. § 456(j). The reason is that conscientious objector beliefs are plastic and are not susceptible of any precise measurement "as of" a given date, as are the items inquired into by Form 127.

The court rejects plaintiff's argument that § 1625.2 is inapplicable to reopenings requested for the purpose of reclassifying a registrant into class I–O or I–A–O. The law is well settled that the regulation applies to C.O. claims, e. g., Boyd v. United States, 269 F.2d 607, 611 (9th Cir. 1959).

Plaintiff contends that if 32 C.F.R. § 1625.2 limits 50 U.S.C. App. § 456(j), the regulation must yield to the statute which does *not* require a C.O. status which *existed* prior to the order to report for induction to be *claimed* prior thereto. The validity of the regulation is also well settled in this Circuit and plaintiff's argument[2] must be rejected,

---

2. Plaintiff relies on Quaid v. United States, 386 F.2d 25 (10th Cir. 1967), which stated that a priority inductee processed pursuant to 50 U.S.C. App. § 456(c) (2) (D) cannot, by virtue of 32 C.F.R. § 1631.8, be deprived of the right to claim the conscientious objector status created by 50 U.S.C. App. § 456(j). The court declared § 1631.8 of the regulations invalid because it authorized an order to report for induction without regard to § 456(j), whereas the statute—§ 456(c) (2) (D)—did not purport to eliminate the conscientious objector status even for priority inductees. Although *Quaid* is support for plaintiff's position, it is not determinative: First, the actual holding appears to be that § 1631.8 of the regulations conflicted with § 456(c) (2) (D) of the statute (although this court concedes that it therefore conflicted with § 456 (j) as well); Second, and more important, *Quaid* found that the registrant *had* submitted his Form 150 *prior* to the issuance of his order to report for induction and that the Form properly apprised the board of his claim, 386 F.2d at 27. Hence, the opinion does not ac-

tually hold that no time limit may be imposed as to when the status of conscientious objector must be measured. Were the court "writing on a clean slate", as it were, plaintiff's argument might have merit. However, plaintiff has cited no viable authority declaring 32 C.F.R. § 1625.2 invalid. The law is to the contrary.

Plaintiff also relies on the Solicitor General's memorandum in *Oestereich* [Oestereich v. Selective Service System, 391 U.S. 912, 88 S.Ct. 1804, 20 L.Ed.2d 651] which concedes that a regulation cannot deprive a registrant of at least a statutory exemption from service.

Plaintiff cites cases which are frankly inapplicable to the question before the court. While the viable cases do stand for the proposition that a Form 150 may be *filed* at the last minute and even after refusing induction, *none* stands for the proposition that it is improper to apply 32 C.F.R. § 1625.2 to the claim once it is on file. At least two cases do stand for the proposition, but they were expressly disapproved in Boyd v. United States, 269 F.2d 607, 612 (9th Cir. 1959).

Boyd v. United States, 269 F.2d 607, 611, 612 (9th Cir. 1959).

### The "Physical Exam" Issue

Plaintiff asserts that in 1962 he was found not acceptable for induction following a physical examination. He further asserts that he was never informed of the reason for the nonacceptability.

Plaintiff's argument is frivolous. No conceivable prejudice has been demonstrated or even alleged other than in conclusory terms.

### The "Form 151" Issue

On September 14, 1967, plaintiff requested and was denied SSS Form 151 which allows persons claiming conscientious objector status to volunteer for civilian work, see 32 C.F.R. § 1660.10. The court rejects plaintiff's argument that the order to report was thereby vitiated. SSS Form 151 adds nothing to the claim for conscientious objector status which must be made by Form 150, though it is true that the filing of Form 151 may result in a more speedy disposition of the Form 150 claim, cf., 32 C.F.R. § 1660.10.

[6] Assuming plaintiff is correct that his board should have reopened independently of the Form 151, the board's refusal to issue the form could not have prejudiced the plaintiff. Assuming the board did not have to reopen the classification but for the Form 151 argument, plaintiff was only prejudiced if the filing of Form 151 requires the board to reopen a classification, for plaintiff's induction order would then have been cancelled. The court has found but one source mentioning such a construction, 1 S.S.L.R. 1050 (¶ 1048). The court rejects the position for the reason that nowhere has the court found any intent to treat a volunteer for civilian work who is also claiming C.O. status any differently from one claiming C.O. status who is not volunteering. Indeed, it is difficult to see why a Form 150 alone should be subjected to the limitation (imposed by 32 C.F.R. § 1625.2) upon reopening after an induction order

is issued, whereas a Form 150 accompanied by a Form 151 should automatically cancel an outstanding induction order. The court therefore holds that the filing of Form 151 does not require a board to test a Form 150 filed after an induction order by any standard other than that of 32 C.F.R. § 1625.2.

### The "Volume of Cases" Issue

Plaintiff contends that 32 C.F.R. § 1622.1(c) and notions of due process demanded a more thorough consideration of plaintiff's claim for conscientious objector status than was actually given. The government contends that the record (Exh. D to Plaintiff's Motion for Summary Judgment filed August 12, 1968) does not prove that plaintiff's case was given any less consideration than was warranted.

■ The court holds that the record, lacking any evidence of the nature of the other matters considered by the local board at its meeting or the time devoted to plaintiff's case, does not support a finding that plaintiff was denied any procedural right.

### The "Ruffalo" Issues

Plaintiff asserts that he was denied adequate notice of the issues to be considered by the local board at the courtesy interview of December 11, 1967, citing In re Ruffalo, 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) (held: disbarment proceeding cannot justify disbarment on conduct not clearly charged in advance). The court cannot agree.

A series of communications involving plaintiff (Selective Service file of plaintiff [hereafter cited as "F"], pp. 98, 101, 106, 138, 150, 153), his attorneys experienced in selective service law (F 107, 111, 156), the State Director of Selective Service (F 111, 122, 124, 143), an Assistant United States Attorney (F 122, 150, 156), and plaintiff's local board (F 98, 101, 106, 107, 122, 124, 138, 143, 150, 153) did adequately put all parties on notice of the issues. The court also notes that plaintiff, unlike the disbarred attorney in *Ruffalo*, initiated the hearing

in question rather than the administrative body.

■ Plaintiff also contends that he should have been notified and given the opportunity to appear each time his classification was considered by his local board. The court is satisfied that such is not the law.

### The "Clerk's Signature" Issue

■ Plaintiff contends that the clerk of the local board was unauthorized to sign the induction order, 32 C.F.R. § 1604.59. The government contends (1) that the order (SSS Form 252) itself authorizes the clerk to sign and that the order is part of the regulations, see 32 C.F.R. § 1606.51(a), and (2) the fact that no formal resolution of the local board was entered authorizing the clerk to sign the order in no way prejudiced the plaintiff.

The court agrees with the government's position.

### The "Miller" Issue

Plaintiff contends that his board should be "deemed" to have reopened his I–A classification at least in December, 1967. The consequence of such a holding would be that plaintiff's induction order would have been cancelled, 32 C.F.R. § 1625.14, and no lawful duty to report for induction would have existed on January 25, 1968. Plaintiff contends that the board's action in December, when it asked plaintiff numerous questions about the nature of his beliefs concerning war and about their consistency with his employment with the National Aeronautics and Space Administration constituted a reopening. Plaintiff relies on Miller v. United States, 388 F.2d 973 (9th Cir. 1967), stating that *Miller* held that a reopening may occur simply as a result of a thorough consideration of a case by the board. The government argues that a reopening for the purpose of considering a C.O. claim may occur after an order to report for induction issues only in two situations: (1) when the local board finds a change in circumstances beyond the registrant's control, 32 C.F.R. § 1625.2; and (2) when an official with the power to order a reopening, such as the State Director, does so, 32 C.F.R. § 1625.3(a). The government contends (1) the local board specifically found no change in circumstances (F 162), and (2) that the *Miller* case held that a reopening had occurred *only* because the State Director had ordered one in that case. Any other rule, according to the government, would transmute cases such as Parrott v. United States, 370 F.2d 388 (9th Cir. 1966), into a virtually automatic method of postponing inductions. The reason is that *Parrott* may be read to require the board to grant a registrant a hearing upon request with regard to an alleged change in circumstances. If a reading of *Miller* was that any genuine discussion and consideration of a registrant's case constituted a reopening, then *Parrott* and *Miller* taken together would always permit a registrant to request a hearing, to discuss the status of his beliefs, to have the board's action "deemed" a reopening, and to thereby cancel his induction order.

■ While the *Miller* case is perhaps not as clear as it might be, the Court of Appeals noted that the "effect" of what the *State Director* (exercising his power under 32 C.F.R. § 1625.3(a)) had done was to free Miller's local board from the change-of-circumstances limitation (on reopening after an order to report issues) of 32 C.F.R. § 1625.2. In *Miller,* the State Director's letter asked the board to consider *all* the information submitted by the registrant since his last classification. In *Miller,* the board was directed to "reopen" if it found a change of "classification" (presumably based on all the information) to be justified. The above would indicate that *Miller* might have reached a different result had the State Director in that case *not* directed the local board to consider *all* the information and that the local board would then have restricted its initial inquiry to whether there had been a *change* in circumstances without regard to whether the circumstances justified a different classification. Subsequent language in

the opinion, which language does not refer back to the fact that the State Director had written his letter, indicates that the board cannot give broad consideration to a registrant's claim and then label the decision as a denial of reopening. But the decision then refers to the inherent discrimination between reopening for some registrants and denying reopening for others, resulting in an appeal for the former and not the latter (32 C.F.R. § 1625.13), when in fact the board acted no differently for the one group than for the other. But that language presupposes that only one group would acquire appeal rights, even though the board acted similarly. Apparently, then, merely the manner in which a board considers a case is not sufficient to constitute a reopening, otherwise similar board action would result in similar appeal rights. Consequently, *Miller* assumed that a general inquiry would *not* always constitute a reopening. This court agrees with the government that the missing element must be the State Director's letter in *Miller,* and the court accepts the government's interpretation of that case and rejects the plaintiff's.

Consequently, the court proceeds to determine whether the facts in the case at bar bring the plaintiff within the *Miller* rule so construed. Did the State Director, in the case of Norman Lloyd Petersen, free the board, as he did in the case of David Bruce Miller, from the change-in-circumstances limitation upon reopening found in 32 C.F.R. § 1625.-2? In *Miller,* the State Director specifically ordered the local board to consider *"all"* the information submitted since the last classification. In the case at bar, one letter from the State Director to the local board dated October 20, 1967, is found at F 124–25. That letter appears clearly distinguishable from the letter in *Miller.* It specifically directs Petersen's local board to determine whether there was a "change in circumstances". At F 143 a second letter from the State Director, dated November 16, 1967, appears which also purports to restrict the board's inquiry to whether there was a change in circumstances.

 The court concludes that the case at bar is not within the *Miller* rule and finds that the board did not reopen plaintiff's classification. The court further finds, applying solely the criterion of 32 C.F.R. § 1625.2 as it applies to the registrant's beliefs, that the board was justified [3] in not reopening because plaintiff did not in fact establish a change in his beliefs or crystallization.[4]

3. The court does not here mean to exclude the possibility that reopening might have been required for some other reason. Also the court is not here considering the allegation that the change in circumstances was the plaintiff's belated discovery of the proper standards of conscientious objection, which allegation is discussed below.

4. In view of the court's disposition of this case, the court here only mentions an argument of plaintiff raised for the first time on the day of trial. *Plaintiff* contends that this court should apply the "basis-in-fact" test on judicial review *only* if the local board (the administrative agency) used the proper standard of administrative review (whether that be "substantial evidence" or "clear and convincing evidence" or some other standard). If the board used an *improper* standard, presumably plaintiff would have this court take one of two courses of action: (1) if a finding by the board using the proper standard of administra-

tive review would be upheld on judicial review whether for the registrant *or* the government, then this court should take action having the effect of vacating the board's classification and remanding the matter to the local board; (2) if, on the other hand, a finding by the board using the proper standard of administrative review would be upheld on judicial review *only* if in favor of the registrant, the court should "reverse" the board's determination, and if the finding would be upheld on judicial review only if in favor of the government, the court should "affirm" the board's determination.

Plaintiff would have this court construct or determine the "proper standard of administrative review" in the present judicial proceeding, compare Woodby v. Immigration and Naturalization Service, 385 U.S. 276, 284–286, 87 S.Ct. 483, 17 L.Ed. 2d 362 (1966). Plaintiff's argument is that we simply do not know what the board actually determined in this case when it refused to reopen plaintiff's I-A

### The "Misleading" Issue

Plaintiff contends that even if 32 C.F.R. § 1625.2 applies to a C.O. claim filed after the issuance of SSS Form 252, and even if the regulation so applied is valid, and even if plaintiff's beliefs as to war remained constant throughout all material periods, he still qualified for reopening because a change in circumstances beyond his control did actually occur.

The court finds the following facts to be proved: Plaintiff, prior to January, 1967, obtained a SSS Form 150 and intended to claim a conscientious objector status. Plaintiff was uncertain of the meaning of questions thereon which dealt with whether he believed in a "supreme being". Plaintiff contacted his local board and arranged for a meeting at which plaintiff hoped to clarify the meaning of the form. Plaintiff was not then aware of the decision, holding or rationale of United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed.2d 733 (1965). Plaintiff met with three members of his board on January 25, 1968. As a result of the discussion which took place, plaintiff left the meeting with the belief that in order to successfully prosecute his C.O. claim, he would have to believe in God in the "traditional" or "orthodox" sense usually associated with the word by a layman, rather than in the more "liberal" sense as defined in Seeger. One member of the board told plaintiff that a "God such as in the Christian religion" was a prerequisite. Plaintiff was also told that his claim

must be substantiated by a "member of the clergy." Plaintiff, thinking that the filing of Form 150, given his own beliefs at the time, would be futile, did not file the form. On July 7, 1967, plaintiff was ordered to report for induction on July 26, 1967. Following a family discussion of the plaintiff's situation, the plaintiff's father contacted and ultimately retained an attorney. Plaintiff discussed the matter with his lawyer, learned of the Seeger decision, felt himself to be within the rule there announced, and filed SSS Form 150 on July 18, 1967.

Plaintiff's local board found that no change in circumstances beyond the registrant's control had been shown (F 94, 97, 145, 162). Hence, his classification was not reopened, 32 C.F.R. § 1625.2. This court agrees that no change in circumstances (in the nature of a change in plaintiff's beliefs concerning war) was shown by plaintiff's Form 150 and accompanying letters. On the contrary, the import of his documents was that he had, since childhood, possessed a basic abhorrence of violence and killing.

However, this court cannot say that plaintiff was not prejudiced if in fact he was misled on January 25, 1967. If plaintiff would have been entitled to conscientious objector status in January, 1967, and if his beliefs did not materially change thereafter, the intervention of the July, 1967 order to report for induction effectively ended plaintiff's opportunity to obtain conscientious objector status, compare Quaid v. United States,

classification because we do not know what standard of proof the board required of the plaintiff.

Even if plaintiff is correct that in a proper case the court should determine the standard the board should use, in light of the court's treatment of the board's failure to reopen in this case, and because the court finds that *no* evidence indicated a change in plaintiff's beliefs following his I–A classification or his induction order, this court is constrained to say that *whatever* the proper administrative standard is, the *only* finding that could be sustained upon judicial review would be a finding in favor of

the government and against the registrant (on the "failure to reopen" issue). Hence, there is no need, in this case, to determine the proper standard of review in a selective service administrative proceeding.

The court notes that the foregoing discussion is limited to the registrant's contention that he did allege a change in circumstances beyond his control and the court's consideration of the nature of any change in his beliefs. That is the only argument to which the foregoing discussion is relevant. It is not relevant to the "procedural", as distinguished from "factual", issues in this case.

386 F.2d 25 (10th Cir. 1967). Had plaintiff filed his Form 150 in January, 1967, he would have been entitled to have his board look at all the information presented and determine whether plaintiff's beliefs entitled him to conscientious objector status. But after the order to report, the board was unable to reach that inquiry because plaintiff's beliefs had remained constant and hence the board was precluded from reopening.

■ The plaintiff claims that his subsequent (to January, 1967) awareness of *Seeger* was a change in circumstances beyond his control. The government claims that ignorance of the law pertaining to the definition of "supreme being" and a subsequent awareness is not the type of "change of circumstances" contemplated by the regulations. This court agrees, see Dugdale v. United States, 389 F.2d 482 (9th Cir. 1968). However, the facts in the case at bar are different from those in *Dugdale*.

The court finds that plaintiff was misled, in January, 1967, into thinking that a belief in God in the traditional or orthodox sense was required to be classed as a conscientious objector. While the action of the board may not have been a wilful or deliberate device to prevent plaintiff from filing his Form 150, see Boswell v. United States, 390 F.2d 181 (9th Cir. 1968), the board's erroneous advice had the same effect. In *Dugdale,* the board was in no way responsible for the registrant's erroneous belief. In the instant case, plaintiff attempted to have his board clarify an ambiguity which has caused courts and commentators difficulty. The court finds it difficult to imagine more appropriate conduct on the part of the plaintiff.

■ The court holds that plaintiff was entitled to have his board reach the inquiry it has not yet made; namely, whether plaintiff's beliefs were such that

they entitled him to conscientious objector status without regard to the change-in-circumstances limitation applicable once an order to report for induction is sent. The court therefore finds and declares that the plaintiff had no lawful duty to submit to induction into the armed forces of the United States on January 25, 1968.[5]

The foregoing memorandum opinion constitutes the court's findings of fact and conclusions of law.

---

5. The court need not, therefore, reach the remaining issues raised in this case; namely, whether affirmative board action is necessary to select and order a registrant to report for induction who is classified I-A, and, if so, whether board ac-

tion in classifying a registrant is tantamount to such action since in a I-A case no discretion thereafter remains in the local board, compare Brede v. United States, 396 F.2d 155 (9th Cir. 1968).