**UNITED STATES of America, Plaintiff,**

v.

**Timothy John HANSEN, Defendant. No. 4–69–Cr. 79.**

United States District Court, D. Minnesota, Fourth Division.

Dec. 19, 1969.

in filling out his classification questionnaire, SSS Form 100, the defendant noted on question No. 2 of Series XI (whether or not the registrant knew of any physical condition which would disqualify him for service) "Total Loss of Hearing in Left Ear due to accident in 1965." Subsequently, on August 23, 1967, the defendant was classified 1-S (H) until June 1968, the time at which he would graduate from high school. On July 16, 1968, the defendant was reclassified 1-A and later ordered to report for a physical examination on September 4, 1968. At the conclusion of this examination the defendant was found fully acceptable for induction into the Armed Forces. However, the defendant returned for further examination and submitted additional documentation of his hearing incapacity from another physician. Still, as of February 1969, the defendant was considered qualified for military service and on April 24, 1969, was ordered to report for induction on May 15, 1969.

The defendant failed to report and instead went into what he termed a period of "seclusion and meditation" before finally turning himself in to the F.B.I. in early July. On November 6, 1969, the defendant requested a Conscientious Objector application or SSS Form 150, which he completed and returned with accompanying letters to his Local Board on November 26, 1969. The Local Board has not reviewed this document.

 Principally two questions were raised at trial for this Court's determination. First, the defendant contended that a valid order to report for induction could not issue without the Local Board specifically holding a meeting in that regard. Second, the defendant maintained that it was incumbent on the Local Board *to give consideration to his C. O. application.*

In support of his first contention the defendant cites to the Court: Brede v. United States, 396 F.2d 155 (9th Cir. 1968), modified at 400 F.2d 599 (9th Cir. 1968); Cupit v. United States, 292

Ralph E. Koenig, Asst. U. S. Atty., for plaintiff.

Wyman Smith, Minneapolis, Minn., for defendant.

## MEMORANDUM DECISION

LARSON, District Judge.

An Indictment was filed against the above named defendant on October 10, 1969, for wilfully refusing to report for and submit to induction in the Armed Forces of the United States as ordered by his Local Selective Service Board. Pursuant to the Indictment this action came to trial before the Court without a jury on November 28, 1969. The chronological sequence of events leading up to this Indictment are as follows: On August 21, 1967, the defendant registered with Local Board No. 48 as required by law;

F.Supp. 146 (W.D.Wis.1968); and United States v. Lott, (C.D.Calif. No. 1921, October 9, 1968). The Court feels that each of these cases is distinguishable and would call to the defendant's attention decisions holding to the contrary on the more precise point raised by his case. *Cupit* and *Brede* involved situations in which a Local Draft Board was required to determine the ultimate disposition of a registrant obligated to perform civilian employment. The simple holding of the two cases is that at some time, either prior to or after receiving authorization, the Local Board must convene to determine what particular civilian work would be appropriate. In the defendant's case, and in the case of every other individual similarly situated, the Local Board by meeting and classifying the individual in question 1-A makes the necessary prerequisite judgment. Then it simply becomes an administrative matter for the Local Board Clerk to mail notices according to the priority set by the registrants' ages. See United States v. Hedges, 297 F.Supp. 946 (S.D.Ia.1969); Petersen v. Clark, 289 F.Supp. 949 (N.D. Calif.1968).

Any objections predicated on the *Lott* decision would be cured by the fact that Local Board 48 did meet and review the defendant's file, and then decided to classify him 1-A. Also, the defendant's notice to report for induction was signed by a member of his Local Board.

The more difficult aspect of the defendant's case is the question of whether or not his file should be reopened to consider his conscientious objector classification. This has been a hotly contested issue in several of the Circuits, which have split on what is the correct conclusion. Generally, the cause for this division of authority has been the interpretation of 32 C.F.R. § 1625.2, which provides:

"The local board may reopen and consider anew the classification of a registrant * * * provided * * * the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction * * * unless the local board first specifically finds there has been a change in registrant's status resulting from circumstances over which the registrant had no control." 32 C.F.R. § 1625.2.

Some Courts, particularly the Second Circuit, have construed this language to authorize reconsideration of an individual who develops conscientious objector propensities after the receipt of his induction notice. For obvious reasons this often has been referred to as the "sudden crystallization" situation. United States v. Gearey, 368 F.2d 144 (2nd Cir. 1966), cert. den. 389 U.S. 959, 88 S.Ct. 335, 19 L.Ed.2d 368 (1967), rehearing den. 389 U.S. 1010, 88 S.Ct. 561, 19 L.Ed.2d 611 (1967); Oshatz v. United States, 404 F.2d 9 (9th Cir. 1968); Petersen v. Clark, supra. Judge Kaufman, the author of Gearey, in a very perceptive opinion carefully delineates between individuals whose beliefs mature prior to the receipt of an induction notice and those who formulate their views subsequent to the notice:

"We hold, therefore, as applied to applicants whose conscientious objections matured prior to receipt of an Order to Report for Induction, § 1625.2 is wholly justified as part of an orderly administrative process * * * the considerations are quite different, however, when a claim of conscientious objection, raised for the first time after receipt of an induction notice, is based on a claim which has not previously matured. Section 6(j) does not set any time limit by which an applicant's conscientious objections must fully crystallize in his mind. It would be improper to conclude that an individual is not a genuine conscientious objector merely because his beliefs did not ripen until after he received his notice, although the belatedness of a claim may be a factor in assessing its genuineness. * * * The realization that induction is pending, and that he may soon be asked to take another's life, may cause a young man finally to crystallize and articulate his

once vague sentiments. * * * " United States v. Gearey, *supra,* at 149, 150.

The rationale for the contrary position has been that the facilitation of an orderly system demands some point in time at which objections can no longer be raised:

> "Otherwise the whole machinery of the Selective Service process may be disrupted by last minute changes in status for purposes of avoidance." Keene v. United States, 266 F.2d 378 (10th Cir. 1959) at 384.

Some Courts have been quite adamant in "rejecting 'the crystallization theory.'" United States v. Hedges, *supra.* See also Davis v. United States, 374 F.2d 1 (5th Cir. 1967); Parrott v. United States, 370 F.2d 388 (9th Cir. 1966); United States v. Schoebel, 201 F.2d 31 (7th Cir. 1953); United States v. Beaver, 309 F.2d 273 (4th Cir. 1962). While other Courts have tacitly disapproved, they have also found that the individual's views did not mature after receipt of the notice. United States v. Jennison, 402 F.2d 51 (6th Cir. 1968); United States v. Ellis, 415 F.2d 1122 (6th Cir. 1969).

This Court believes that in the immediate situation there may have been a "crystallization" after receipt of the induction notice. The defendant from the time of his original registration to the present reasonably presumed that he would be disqualified from military service because of his hearing defect. The defendant's file contains a letter from Dr. Harold S. Ulvestad, an ear, nose, and throat specialist, attesting to the defendant's "complete loss of hearing in the left ear." Certainly with this document in his possession the defendant had good cause to believe he would never have to serve in the Armed Forces. Thus the circumstances are not those described in *Parrot:*

> "An average man of average intelligence, who can read, must daily realize that he may, once he is subject to a draft call from his board due to his designated classification, be 'soon'

called upon to kill." 370 F.2d 388, at p. 396.

Without passing on the merits or substantiality of the defendant's C. O. application, the Court finds the defendant's convictions may have matured after the receipt of his induction notice and to date have not been reviewed. Therefore, the Court finds the defendant not guilty of the charge set forth in the Indictment, and it is dismissed without prejudice, however, to any future proceedings consistent herewith which the Selective Service System may initiate with reference to defendant's classification.