UNITED STATES of America
v.
Ronald WILSON, Defendant.
No. 71 Cr. 969.

United States District Court,
S. D. New York.
July 20, 1972.

Whitney North Seymour, Jr., U. S. Atty., for the United States by George E. Wilson, Sp. Asst. U. S. Atty.

Alfred Lawrence Toombs, New York City, for defendant.

OPINION

FREDERICK van PELT BRYAN, District Judge:

Ronald Wilson was tried before me without a jury on a one-count indictment charging that on April 15, 1971 and continuously thereafter he wilfully and knowingly failed and refused to submit to induction in the armed forces, as ordered by his local Selective Service Board, in violation of the Military Selective Service Act of 1967, 50 App. U.S.C.

§ 462(a), and a Selective Service Regulation, 32 C.F.R. 1632.14.

At the conclusion of the trial Wilson moved for judgment of acquittal and decision was reserved. I now grant the motion for judgment of acquittal and find Wilson not guilty.

The prosecution's case was based on Selective Service records and undisputed testimony as to Wilson's refusal to submit to induction. His refusal was upon the stated ground that his religious training and belief as a Jehovah's Witness forbade him to serve in the armed forces. The prosecution established the following.

In March, 1969, Wilson, then a high school student in Charleston, South Carolina, duly registered with his Selective Service Board there and was given a high school student deferment (1–SH). On September 14, 1970, shortly after Wilson had come to New York, he was reclassified by his local board as 1–A. He then received an order from his local board to report for pre-induction physical examination in Charleston. At his request, the examination was transferred to New York. On November 17, 1970, Wilson duly reported for physical examination and was found physically qualified for induction. On January 7, 1971, the local board ordered Wilson to report for induction and, at his request, induction was transferred to New York. At this point, for the first time, Wilson requested and received from his local board a Form SSS 150, the special form for conscientious objector, which he filled out and filed, claiming exemption on the ground of his religious training and belief as a member of the Jehovah's Witnesses. The local board, after postponing his induction date, denied his conscientious objector application, stating:

Board felt information submitted by registrant was not sufficient to warrant C O classification. Registrant did not request C O until after induction order had been issued. Board denied to reopen classification.

It then directed Wilson to report for induction on April 15, 1971. Wilson reported but refused to submit to induction on the ground that his religious training and belief forbade him to serve in the armed forces.

Wilson took the stand in his own defense and his testimony, which I find quite believable and is virtually uncontradicted, placed the case in a much different posture from that shown by the cold record. His defense was that he had a bona fide claim for exemption as a conscientious objector and that his failure to take timely procedural steps to assert that claim was brought about (a) by his lack of understanding of the term "conscientious objector" and of the procedure necessary to obtain such an exemption; (b) the failure and refusal of the Selective Service System and its personnel, despite his repeated requests, to give him proper advice and assistance on this subject; and (c) incorrect and misleading information and advice which was given him by System personnel. His testimony supported that defense.

Ronald Wilson was born and brought up in Charleston, South Carolina. His family were Jehovah's Witnesses and he was raised in the strict tenets of that sect. There is no reason to doubt that he followed the tenets of the Jehovah's Witnesses from childhood and believed in those tenets.[1]

Wilson was the youngest of 7 children, 5 boys and 2 girls. All of his 4 brothers had served in the armed forces, one as a sergeant in the Green Berets, one as a sergeant of Marines, another in the Marines and the fourth in the Navy. It appears, quite understandably, that, as the youngest child and with his brothers in the services, particular emphasis was laid upon his religious training, both

---

1. The Government's argument that since Wilson was not baptized he did not present a prima facie case of conscientious objection is rejected. United States v. Harris, 302 F.Supp. 1194 (D.Or.1968).

while his father was alive and after his mother was left a widow.

Shortly after his graduation from high school in Charleston, in May of 1970, Wilson came to New York and obtained a job as a messenger with a downtown messenger service. He was then 19. Thus, he was a relative stranger in New York when he received his notice of reclassification from high school student deferment to 1–A on September 14, 1970. He felt that his religious training and belief as a member of the Jehovah's Witnesses entitled him to some sort of relief from service in the armed forces, but he had no real understanding of the procedure necessary to claim and obtain such an exemption, or of the technical term "conscientious objector" and its implications.

Thus, when Wilson received his notice of reclassification, he sought advice and assistance as to the procedure necessary to obtain a review of his 1–A classification.

He then began a number of visits to the Armed Forces Examining and Entrance Station (AFEES), at 39 Whitehall Street in downtown New York, seeking such advice and assistance. During these visits, largely made during his lunch hour, Wilson talked to numbers of persons on the staff, including two uniformed sergeants, a major, and a Mr. LeBron, liaison officer between the Selective Service System and the AFEES,[2] asking about an appeal from his 1–A classification and how he could get in touch with an appeal agent for that purpose. What he obtained can only be described as a series of brush-offs, though on one of his early visits he was casually told to wait until he reported for induction.

When Wilson received the order from his local board to report for physical examination, he again went to Whitehall Street for assistance and was told to go to the Selective Service offices at the Federal Building to arrange for transfer of the examination to New York. This he did. Wilson asked the clerk who was preparing a form for transfer about taking an appeal and seeing an appeal agent. No attempt was made to refer him to anyone in New York who might help him with his problem. There was only a vague reference back to his local board in Charleston.[3]

Attempts to reach his local board there by long distance telephone from a phone booth were not successful. Thereafter, he was again told, on another of his visits to Whitehall Street, to wait until induction.

When Wilson reported to Whitehall Street for his physical on November 17, he again asked about seeing an appeal agent and was told that he must be "one of those objectors . . . ." He did not fully understand what was meant but his questions as to what an "objector" was brought no helpful response. Further efforts on that day to talk to LeBron resulted in a brush-off.

At the time Wilson, after receiving his induction order, arranged to have his induction transferred to New York, he once more raised the question of an appeal and was again told by one of the Selective Service employees to wait until induction.

By this time Wilson's mother in Charleston had become aware of her son's difficulties and apparently had consulted a Jehovah's Witnesses "servant" who had some knowledge of the proce-

2. Vis-a-vis a registrant such as Wilson, the AFEES personnel and Selective Service employees are considered to be one and the same, United States v. Holmes, 426 F.2d 915, 918 (2d Cir. 1970), vacated on other grounds, 402 U.S. 969, 91 S.Ct. 1644, 29 L.Ed.2d 134 (1971); United States v. Stafford, 389 F.2d 215, 218 (2d Cir. 1968), and will hereafter be referred to as Selective Service personnel.

3. When the local board transmitted the Form 150 to Wilson after the induction order had been issued, it advised him by letter, dated January 28, 1971: "Please note for information concerning an appeal agent go to the local board in New York and they will be glad to help you." (Gov't Ex. 2J) By this time, it was already too late for the appeal agent to be of any real assistance.

dure necessary to obtain a conscientious objector exemption. She wrote to Wilson attempting to explain what a conscientious objector was and the necessity for filing the special form for conscientious objection, Form 150. She also wrote a letter of explanation to the Charleston local board. Though Wilson had already received the induction order, he immediately requested and obtained a Form 150 from his local board, filled it out claiming exemption as a conscientious objector and filed it. The Form 150, had it been timely filed, would plainly have made a prima facie case for C.O. exemption. However, as has been indicated, the Charleston local board denied the application to reopen his classification, noting that it had not been filed until after the induction order had been issued, and directed him to report for induction.

Wilson reported to the induction center as directed but refused induction. He wrote out, on a piece of yellow paper, his reasons for so doing. That statement, despite its halting and confused language, nevertheless expresses a sincere conviction that his religious training and belief forbade him to serve in the armed forces and that he was willing to go to prison rather than to violate these religious principles.

The prosecution did not seriously impugn Wilson's testimony. It relied heavily on the fact that when Wilson submitted his original Classification Questionnaire in April, 1969, while he was still in high school and entitled to a high school deferment, he did not claim the conscientious objector exemption at the end of the somewhat cryptic section of the form entitled "Conscientious Objector" and wrote in "does not apply". This, the prosecution claims, indicates that Wilson's conscientious objector claim was not made in good faith but was merely an afterthought to avoid service. This claim is not sustained by the record. It is apparent that Wilson's failure to fill out this section of the Classification Questionnaire was due to his lack of understanding of the term "conscientious objector" and quite possibly also because he knew he could expect high school deferment at that time anyway.

The prosecution's efforts to show, on cross examination, that Wilson in fact did not hold sincere religious convictions, and was merely trying to evade service on spurious grounds, were notably unsuccessful. Wilson's testimony stands virtually unimpeached and uncontradicted.

On this record, it appears that what we have here is a youth of sincere religious convictions which would have entitled him, at the least, to serious consideration for exemption as a conscientious objector, who failed to take the timely procedural steps necessary to obtain such an exemption. He was confused as to his rights, as to the procedures necessary to assert them and even as to the terminology in which to express them.

A stranger in New York and having only limited contact with his home community, he sought, in a somewhat bumbling and confused fashion, to obtain help from the official sources which he reasonably expected could give him the necessary advice and assistance, including the Whitehall Street induction center, the Selective Service liaison officer there, and Selective Service personnel at the Federal Building in Foley Square. Despite his repeated inquiries, he got no help at all on his problem and, indeed, on more than one occasion received completely erroneous advice and information.

In the meantime, Wilson scrupulously followed the orders he received from his local board and duly reported for his physical examination. When he finally received intelligible advice as to how to proceed, it was from his mother and not from any of the Selective Service personnel from whom he had sought assistance. By then, the induction order had already been issued and it was too late. He was trapped in a procedural maze from which he was unable to extricate himself. His conscientious objector ap-

plication was obviously not based on a late crystallized claim but rather upon convictions held from childhood. When this application was turned down, he followed the only course he believed was open to him, which was to report at the induction center and refuse induction upon the ground that to serve in the armed forces would violate his religious convictions.

The question, then, is whether under these facts and circumstances Wilson is guilty of the felony of wilfully and knowingly refusing to submit to induction. In my view, the evidence fails to establish his guilt of that offense and, indeed, indicates the contrary.

■ I hold that the dilemma in which Wilson was placed at the time he reported to the induction center and his failure to pursue and exhaust his Selective Service remedies prior thereto, were brought about in large part by the failure of the Selective Service System and its employees to give him the assistance he so earnestly sought and to which he was entitled, as well as the affirmatively erroneous advice which the personnel of the System gave him. Under these circumstances, Wilson's failure to pursue the remedies to which he was entitled and to exhaust such remedies cannot be said to be due to his own neglect, but due to the acts and omissions of the Selective Service System. Under such circumstances, the induction order on which he reported was invalid because he had been deprived of his procedural rights within the Selective Service System and he cannot be found guilty of failure to obey that order and submit to induction.

■ Absent requests for assistance, the Selective Service System is not required to advise registrants as to their qualification for any of the deferments and exemptions provided by law. *See* Palmer v. United States, 401 F.2d 226, 228 (9th Cir. 1968); United States v. Hosmer, 310 F.Supp. 1166, 1171 (D.Me. 1970). Registrants are furnished with a list of classifications and it is normally up to them, in the first instance, to ascertain whether they qualify for a deferment or exemption and to claim such status.

■■ Where, however, a registrant seeks advice and assistance from the System, Selective Service employees must provide him with correct and useful information. It has been repeatedly held that failure to do so invalidates a subsequent induction order. *E. g.*, United State v. Bagley, 436 F.2d 55 (5th Cir. 1970); United States v. Williams, 420 F.2d 288 (10th Cir. 1970); Powers v. Powers, 400 F.2d 438 (5th Cir. 1968); Petersen v. Clark, 289 F.Supp. 949, 957–958 (N.D.Cal.1968); Striker v. Resor, 283 F.Supp. 923, 926 (D.N.J.1968); United States v. Bryan, 263 F.Supp. 895 (N.D.Ga.1967); United States v. Howe, 144 F.Supp. 342 (D.Mass.1956). Moreover, the System cannot ignore or disregard requests for assistance. United States v. Bagley, 436 F.2d 55 (5th Cir. 1970).

■ In determining whether a request for assistance has been made, a rule of reason must be applied. If the System has reasonable notice that a registrant is seeking assistance, it cannot turn its back on him. *See* United States v. Turner, 421 F.2d 1251 (3d Cir. 1970); United States v. Moyer, 307 F.Supp. 613 (S.D.N.Y.1969); United States ex rel. Vaccarino v. Officer of the Day, 305 F. Supp. 732 (S.D.N.Y.1969). As the Third Circuit said in *Turner*,

[W]hen a registrant indicates, no matter how unclearly, a desire for a procedural right, it is the duty of the board to construe it in favor of the registrant and if need be to obtain clarification from him.

421 F.2d at 1255 (footnote omitted) "Registrants are not to be treated as though they were engaged in formal litigation assisted by counsel," Simmons v. United States, 348 U.S. 397, 404 n. 5, 75 S.Ct. 397, 401, 99 L.Ed. 453 (1955).

Wilson's repeated efforts to secure assistance and to be advised of his rights gave the System ample notice of his "de-

sire for a procedural right." This is especially true in the case of an untutored registrant like Wilson for whom the courts have shown special solicitude. *See, e. g.*, United States v. Zaragoza, 449 F.2d 1278 (9th Cir. 1971); United States v. Stephens, 445 F.2d 192, 195–196 (3d Cir. 1971).

Here, Wilson was victimized by a callous indifference on the part of the System.

> Instead of reaching out to be helpful to him, the . . . [System] warily maintained its guard against him and declined to give him any assistance, even though he did not know enough to ask for it in the requisite form. . . . Far from following the principle of uberrima fides . . . [the System] acted in a manner more appropriate to a common law pleader.

United States v. Turner, 421 F.2d 1251, 1254 (3d Cir. 1970).

Plainly, Wilson was prejudiced by the refusal to give him the assistance which he sought and by the erroneous advice to wait until induction to present his claim. Thus he was deprived of substantial procedural rights, including timely access to an appeal agent to enable him to assert those rights. *See* United States v. Bagley, 436 F.2d 55 (5th Cir. 1970); Kulas v. Laird, 315 F.Supp. 345, 349–350 (E.D.N.Y.1970). *Cf.* Steele v. United States, 240 F.2d 142, 145–146 (1st Cir. 1956); United States v. Howe, 144 F.Supp. 342 (D.Mass.1956); United States v. Schwartz, 143 F.Supp. 639 (E.D.N.Y.1956).

For these same reasons, Wilson cannot be penalized for failing to exhaust his administrative remedies. United States v. Williams, 420 F.2d 288 (10th Cir. 1970); United States v. Davis, 413 F.2d 148 (4th Cir. 1969); Powers v. Powers, 400 F.2d 438 (5th Cir. 1968); Petersen v. Clark, 289 F.Supp. 949 (N.D.Cal. 1968); United States v. Bryan, 263 F.Supp. 895 (N.D.Ga.1967). Thus, McGee v. United States, 402 U.S. 479, 91 S.Ct. 1565, 29 L.Ed.2d 47 (1971) is inapposite.

Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), does not dictate a result contrary to that I reach here, as the prosecution contends. The question presented in *Ehlert* was

> whether a Selective Service local board must reopen the classification of a registrant who claims that his conscientious objection to war in any form crystallized between the mailing of his notice to report for induction and his scheduled induction date.

Id. at 100, 91 S.Ct. at 1321. Wilson, by contrast, as a Jehovah's Witness from childhood is plainly not a registrant whose beliefs crystallized after receipt of an order to report for induction.

Moreover, *Ehlert* was predicated on the premise that every registrant has a right to have his claim for conscientious objector exemption considered on the merits, in one forum or another. In the case of a registrant whose beliefs crystallized after the issuance of the induction order, such consideration would be given by the military after his induction into the armed forces.

Wilson, whose beliefs plainly did not crystallize after the induction order but had existed from childhood, could not have had his claim considered by the military had he submitted to induction. Grubb v. Birdsong, 452 F.2d 516 (6th Cir. 1971). Wilson was thus deprived of any forum in which to have his claim considered, because of the conduct of Selective Service System personnel which has been described.[4]

---

4. Of course, under the circumstances of this case, in finding Wilson not guilty of the charge I do not pass on the ultimate merits of his claim for conscientious objector exemption. I do hold that he is entitled to have his claim considered on the merits by the Selective Service System with the normal rights of review.

The post-*Ehlert* expression of Congressional intent contained in H.R.Rep.No. 92–433 (July 30, 1971), the Conference Report which accompanied P.L. 92–129

This opinion constitutes my findings of fact and conclusions of law under F. R.Crim.P. 23(c).

Judgment of acquittal will be entered accordingly.

It is so ordered.

(Sept. 28, 1971) containing amendments to the Military Selective Service Act, is in accord:

The House conferees were adamant in their opposition to a Senate amendment which would have prohibited the induction of registrants who filed a claim of conscientious objection after receipt of their induction notice. Therefore, the Senate receded with the understanding that in unusual cases, local boards would have the discretionary authority of extending to such registrants a hearing on their late claim if the circumstances so warranted. U.S.Code Cong. & Admin.News 1971, p. 1499.